**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **MARIANO TORRES and** | ) | |
| **LESTER WILSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.:  25-CV-3474** |
| | ) | |
| **JAMES CARLSON, AIDAN PARISI** | ) | **Oral argument requested** |
| **GRANT MINER, CATHERINE** | ) | |
| **CURRAN-GROOME, PEOPLE'S** | ) | |
| **FORUM, INC., LISA FITHIAN,** | ) | |
| **GABRIEL YANCY, ETHAN CHOI,** | ) | |
| **and JOHN DOES 1–40,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT THE PEOPLE'S FORUM'S**
**MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**</u>

**Table of Contents**

I.     **INTRODUCTION**................................................................................................ 1

II.    **BACKGROUND AND ALLEGATIONS IN THE FIRST AMENDED COMPLAINT**.......................................................................................... 3

    A.  Allegations that on April 29, 2024, persons other than The People's Forum met as co-conspirators to plan to seize Hamilton Hall and that, on this same day, TPF held a public meeting attended by journalists and streamed on Zoom in which it made no reference to Hamilton Hall or a plan to seize it ................................................................................ 3

    B.  Allegations that on April 29, 2024, persons other than The People's Forum entered and seized Hamilton Hall, causing injury to plaintiffs, two non-Jewish janitors who happened to be working overnight shifts .......................................................................... 5

    C.  Allegations that during the period of April 17, 2024, through April 30, 2024, TPF engaged in anti-Zionist speech and called for protest rallies outside of the University ..... 6

III.   **THE LEGAL FRAMEWORK OF 42 U.S.C. § 1985(3)** ................................. 9

IV.   **ANTI-ZIONISM IS NOT ANTI-JUDAISM** ................................................. 11

V.    **ARGUMENT** ................................................................................................ 13

    A.  Plaintiffs' 42 U.S.C. § 1985(3) count should be dismissed for failure to state a claim.... 13

        1.  Plaintiffs' Section 1985(3) claims must be dismissed where Plaintiffs fail to allege that they are Jewish or were perceived to be Jewish.............................. 13

        2.  Plaintiffs' FAC contradicts any claim of Jewish-based animus in the alleged plot to seize Hamilton Hall through violent means ........................................... 16

        3.  Plaintiffs have failed to allege cognizable class-based animus against TPF under Bray v. Alexandria Women's Health Clinic ........................................... 17

        4.  Plaintiffs do not properly allege the violation of a protected right .................. 19

            a.  Plaintiffs do not allege they were engaged in interstate or intrastate travel and, therefore, have failed to allege a violation of the right to travel................................................................................................ 19

            b.  The "right to be free from racial violence" is not cognizable under § 1985(3) .................................................................................... 21

        5.  The alleged conspiracy was not aimed at violating Plaintiffs' rights .............. 21

6.  The FAC does not plead that TPF joined a conspiracy to occupy Hamilton Hall through class-based violence ........................................................................... 22

7.  Plaintiffs' "information and belief" averments should be ignored ................... 23

B.  Plaintiffs' 42 U.S.C. § 1986 claim should be dismissed for failure to state a claim. ....... 24

C.  The FAC should be dismissed with prejudice. ................................................................ 24

**VI.   CONCLUSION** .............................................................................................................. **25**

## Table of Authorities

### Cases

*Albert v. Carovano*,
  851 F.2d 561 (2d Cir. 1988)....................................................................................... 16

*Arista Recs., LLC v. Doe 3*,
  604 F.3d 110 (2d Cir. 2010)....................................................................................... 23

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................... 17

*Aulson v. Blanchard*,
  83 F.3d 1 (1st Cir. 1996)............................................................................................ 14

*AYDM Assocs., LLC v. Town of Pamelia*,
  205 F. Supp. 3d 252 (N.D.N.Y. 2016)................................................................. 14, 15

*Bray v. Alexandria Women's Health Clinic*,
  506 U.S. 263 (1993).............................................................................................. passim

*Brito v. Arthur*,
  403 F. App'x 620 (2d Cir. 2010) ............................................................................... 17

*Brodie v. Green Spot Foods, LLC*,
  503 F. Supp. 3d 1 (S.D.N.Y. 2020)............................................................................ 23

*Brown v. City of Oneonta, New York*,
  221 F.3d 329 (2d Cir. 2000)....................................................................................... 24

*Campbell v. Westchester Cnty.*,
  No. 96 CIV. 0467 (JSM), 1997 WL 773702 (S.D.N.Y. Dec. 11, 1997)................... 20

*Canel v. Art Inst. of Chicago*,
  No. 23 CV 17064, 2025 WL 564504 (N.D. Ill. Feb. 20, 2025)................................ 11

*Citizens United v. Schneiderman*,
  882 F.3d 374 (2d Cir. 2018)....................................................................................... 23

*Clark v. Boughton*,
  No. 3:21-CV-1372 (SRU), 2022 WL 4778582 (D. Conn. Oct. 3, 2022)................... 25

*Corsi v. Gestone*,
  No. 220CV4799DRHSIL, 2021 WL 5416623 (E.D.N.Y. Nov. 19, 2021)............... 21

*Cuoco v. Moritsugu*,
  222 F.3d 99 (2d Cir. 2000)......................................................................................... 25

*Doe v. AR*,
No. 21-CV-06353-FPG, 2021 WL 5416235 (W.D.N.Y. Nov. 19, 2021) .................. 19, 21, 25

*Dolan v. Connolly*,
794 F.3d 290 (2d Cir. 2015) ............................................................................. 14, 19

*Emanuel v. Barry*,
724 F. Supp. 1096 (E.D.N.Y. 1989) ............................................................................ 21

*Foman v. Davis*,
371 U.S. 178 (1962) ...................................................................................................... 24

*Gang v. Zhizhen*,
No. 3:04CV1146 (RNC), 2016 WL 1275026 (D. Conn. Mar. 31, 2016) ............................. 19

*Gleason v. McBride*,
869 F.2d 688 (2d Cir. 1989) ................................................................................. 14, 18

*Griffin v. Breckenridge*,
403 U.S. 88 (1971) ........................................................................................ 9, 10, 19, 20

*Hickey-McAllister v. British Airways*,
978 F. Supp. 133 (E.D.N.Y. 1997) ............................................................................ 17

*Hogan v. Cnty. of Lewis, N.Y.*,
No. 7:11-CV-0754 LEK/ATB, 2015 WL 1400496 (N.D.N.Y. Mar. 26, 2015) .................. 21

*Jenkins v. Miller*,
983 F. Supp. 2d 423 (D. Vt. 2013) ............................................................................. 21

*Jews for Jesus, Inc. v. Jewish Cmty. Rels. Council of New York, Inc.*,
968 F.2d 286 (2d Cir. 1992) .................................................................................. 10, 11, 14

*Johnson v. Comm'n on Hum. Rts. & Opportunities*,
No. 3:24-CV-728, 2024 WL 3649743 (D. Conn. July 8, 2024) ............................... 22

*Katz v. Morganthat*,
709 F. Supp. 1219 (S.D.N.Y.) .................................................................................... 24

*Landau v. Corp. of Haverford Coll.*,
780 F. Supp. 3d 548 (E.D. Pa. 2025) ...................................................................... 11

*Manhart v. WESPAC Found., Inc.*,
No. 24-CV-08209, 2025 WL 2257408 (N.D. Ill. Aug. 7, 2025) ............................... 25

*Masri v. Thorsen*,
No. 17-CV-4094 (KMK), 2020 WL 1489799 (S.D.N.Y. Mar. 27, 2020) ..................... 17

*McCarthy v. Dun & Bradstreet Corp.*,
  482 F.3d 184 (2d Cir. 2007) ............................................................................................... 24

*McLoughlin v. Altman*,
  No. 92 CIV. 8106 (KMW), 1993 WL 362407 (S.D.N.Y. Sept. 13, 1993) .............................. 19

*Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  7 F.3d 1085 (2d Cir. 1993) ...................................................................................... 9, 17, 24

*Ostrer v. Aronwald*,
  567 F.2d 551 (2d Cir. 1977) ............................................................................................... 22

*Def. for Child. Int'l-Palestine v. Biden*,
  714 F. Supp. 3d 1160 (N.D. Cal.) ...................................................................................... 12

*Puglisi v. Underhill Park Taxpayers Assoc.*,
  125 F.3d 844 (2d Cir. 1997) ......................................................................................... 14, 15

*Reyes v. Fairfield Props.*,
  661 F. Supp. 2d 249 (E.D.N.Y. 2009) ................................................................................ 17

*Romer v. Morgenthau*,
  119 F. Supp. 2d 346 (S.D.N.Y. 2000) ............................................................................... 22

*Saint Francis Coll. v. Al-Khazraji*,
  481 U.S. 604 (1987) .......................................................................................................... 10

*Schorr v. Dopico*,
  205 F. Supp. 3d 359 (S.D.N.Y. 2016) ............................................................................... 23

*Shaare Tefila Congregation v. Cobb*,
  481 U.S. 615 (1987) .......................................................................................................... 10

*Sines v. Kessler*,
  324 F. Supp. 3d 765 (W.D. Va. 2018) ............................................................................... 15

*Spencer v. Casavilla*,
  44 F.3d 74 (2d Cir. 1994) .................................................................................................. 21

*Spencer v. Casavilla*,
  903 F.2d 171 (2d Cir. 1990) ......................................................................................... 19, 20

*StandWithUs Ctr. for Legal Just. v. Massachusetts Inst. of Tech.*,
  742 F. Supp. 3d 133 (D. Mass. 2024) ........................................................................... 21, 22

*Students for Just. in Palestine v. Abbott*,
  756 F. Supp. 3d 410 (W.D. Tex. 2024) .............................................................................. 11

*Tavoloni v. Mount Sinai Med. Ctr.*,
  198 F.3d 235 (2d Cir. 1999) ........................................................................... 19

*Thomas v. Roach*,
  165 F.3d 137 (2d Cir. 1999) ...................................................................... 22, 24

*Turner v. Boyle*,
  116 F. Supp. 3d 58 (D. Conn. 2015) .......................................................... 19, 22

*United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*,
  463 U.S. 825 (1983) ................................................................... 9, 10, 16, 18

*Webb v. Goord*,
  340 F.3d 105 (2d Cir. 2003) ........................................................................... 22

**Statutes**

42 U.S.C. § 1985(3) ........................................................................... passim

42 U.S.C. § 1986 ................................................................................... 1, 17, 24

New York Workers Compensation Law §2(7) .......................................... 15

## I.    INTRODUCTION

This lawsuit against The People's Forum (TPF), a non-profit organization that supports movements for social justice,[1] is part of a broadside attack on free speech and dissent in the United States, a dangerous effort to use all means to punish based on political viewpoint.

TPF was, by the terms of the pleading, not a participant in the student Columbia Gaza Solidarity Encampment. TPF is not alleged to have participated in the seizure of Hamilton Hall. TPF is not included by Plaintiffs among the alleged co-conspirators who, on April 29, 2024, plotted to seize Hamilton Hall.

TPF is alleged to have made statements that are firmly anti-Zionist, in condemnation of genocide, in solidarity with students, and to have called for rallies outside of Columbia.

Plaintiffs' counsel have concocted a frivolous federal civil rights conspiracy suit for the purpose of harassing those with whom they disagree, urging a revisionist and expansive re-definition of "anti-Semitism" to punish speech critical of Israel, conflating anti-Zionism with anti-Judaism, loading their First Amended Complaint ("FAC") with conclusory allegations, and baseless and improper "information and belief" allegations.  This case is a SLAPP suit (Strategic Lawsuit Against Public Participation), filed in federal court to circumvent the anti-SLAPP law of New York.

The gravamen of the FAC is that students of all faith traditions and backgrounds, to include many Jewish students and a Jewish student organization, encamped at Columbia to bring attention to the horrors occurring in Gaza and to advance related policy demands of the University. In the heated debate over Israel, Jews and non-Jews are on both sides of the issues.

Not surprisingly, given the storied history of Columbia students taking over Hamilton Hall during protests over many decades, an alleged plan was initiated on April 29, 2024, to seize the Hall, the purpose of which was to pressure Columbia to acquiesce to student demands of divestment, transparency, and amnesty.

Plaintiffs invoke 42 U.S.C. § 1985 and § 1986 as the sole basis to exercise the authority

---

[1] *See* About, The People's Forum (last visited Sept. 18, 2025), https://perma.cc/55U8-Q86U.

1

of this Court over the litigants, yet this case is not like others that invoke that very limited federal statute. This is not a complaint alleging racist violence by white supremacists against Black persons. Or violence against Jews. The alleged conspiracy does not purport to target anyone for threats or violence on the basis of class membership. The facts do not fit the elements of the federal claims.

While invoking class-based protections of Jews, Plaintiffs admit they are not Jewish, were not perceived as Jews, and they do not assert themselves to be advocates for Jews or Jewish causes (much less to have engaged in such active support of Jews during the underlying events). Incongruously, they repeatedly allege that Jewish Voice for Peace is a co-conspirator in the underlying events ostensibly to deprive the non-Jewish plaintiffs of the protected rights of Jews.

The FAC strains to identify a protected right cognizable under a statute the Supreme Court has, time and again, warned is not to be made into a generalized federal tort statute. Plaintiffs aver they suffered a loss of their "right to travel," yet all events are intra-campus. There is no highway travel or public roadway implicated. Nor is there a plausible claim of a conspiracy that had as its purpose interference with the right to travel. Students seized a hall to hold it. Plaintiffs aver loss of a general right to be free from racial violence, a claim that courts in this Circuit repeatedly reject as not grounded as a constitutional right. Yet, Plaintiffs disclaim that threats or violence were contemplated on a racial or class basis, alleging instead that such was incidentally contemplated against anyone who might obstruct the seizure of the hall.

Plaintiffs' counsel may disfavor TPF's political viewpoints, and the political messaging in the seizure of the hall (like the encampment generally) may be truly disturbing to their and others' political sensibilities, including Jews and non-Jews. Likewise, the war that the United Nations Commission of Inquiry this week called a genocide, and the support of that war, is truly disturbing to many Jews and non-Jews, including those whose families have been devastated.

The takeover of a university hall to elevate student demands is not a conspiracy to engage in race-based violence.

Plaintiffs wrongfully conflate criticism of Israel, criticism of Zionism, and criticism of

Columbia's investments, with anti-Judaism, despite a long history of Jewish diversity of thought regarding Israel and the involvement of many Jewish activists in the pro-Palestine movement.

The FAC fails at every level, is frivolous, and should be dismissed with prejudice.

## II.    BACKGROUND AND ALLEGATIONS IN THE FIRST AMENDED COMPLAINT

### A.    Allegations that on April 29, 2024, persons other than The People's Forum met as co-conspirators to plan to seize Hamilton Hall and that, on this same day, TPF held a public meeting attended by journalists and streamed on Zoom in which it made no reference to Hamilton Hall or a plan to seize it

Plaintiffs allege "on information and belief" that, on April 29, 2024, a group of co-conspirators, which excludes The Peoples Forum, FAC ¶ 101, during a meeting at TPF's midtown community center "and in the hours that followed" at unspecified other location(s) "solidified and set into motion their coordinated plan to seize Hamilton Hall." *Id.*

Plaintiffs identify the alleged co-conspirators, all of whom are named defendants, *excluding The People's Forum* from this averment. *Id.* ¶ 101.

The purpose of this alleged plan was "to seize and hold Hamilton Hall until such time as Columbia acquiesced to" certain policy demands, *id.* ¶ 154, i.e., "divestment, financial transparency, and amnesty," *id.* ¶ 135.

This was not an alleged plan to do violence against Jews. Plaintiffs allege that this plan countenanced threats or violence only incidentally, against *anyone* regardless of class membership, and then only if they posed a purported obstacle to the seizure. *Id.* ¶ 154 (contemplated such if they encountered "anyone who might stand in their way" regardless of class membership); *id.* ¶ 102 (against any "employees if they posed any obstacle").

Plaintiffs allege regarding TPF, that on April 29, 2024, consistent with the practice of holding regular volunteers' meetings to discuss organizing in support Palestinian rights, FAC ¶ 97, an evening "Volunteer Meeting" was held at TPF's community center, *id.* ¶ 98. The meeting was public, was "publicly advertis[ed], *id.* ¶ 98, was broadcast on Zoom, *id.* ¶ 100, was attended by "[m]ore than 100 individuals," *id.* ¶ 99, and "countless others … via Zoom," *id.,* and was reported on by "reporters who attended via Zoom" from the Free Beacon, *id.* ¶ 100. The primary

3

subject discussed, allegedly, was next steps to support encamped protestors. *Id.* ¶ 98.

The Free Beacon self-identifies as engaging in "combat journalism" in which they state their mission to be "taking the fight to the left." Matthew Continetti, *Combat Journalism: Taking the fight to the left*, The Free Beacon, (Feb. 6, 2012), https://perma.cc/FA8L-ZNXV. Their interest is in publishing anything that could bring organizations such as The People's Forum into disrepute and to report, construe, or interpret any little thing that was said at this Volunteers' Meeting to connect TPF with any allegation.

Yet, as reflected in FAC ¶ 100, there was not even a stated reference to Hamilton Hall at this meeting. Manolo De Los Santos reportedly urged those in attendance to "support our students so that the encampments go for as long as they can" and he urged that, when students request supportive demonstrations, "we have to go back out." *Id.* ¶ 100. The Free Beacon reports "break-out sessions that focused on organizing new methods of 'resistance'" then occurred. *Id.* That is it. This does not allege participation by The People's Forum in a conspiracy of any sort at all nor does it allege a plan with TPF as a party to an agreement to engage in illegal conduct, much less allege a plan countenancing violence, against Jews or anyone.

Plaintiffs allege in Count One that preceding the seizure of Hamilton Hall, on April 29, 2024, The People's Forum posted on social media to "MOBILIZE TO COLUMBIA NOW." *Id.* ¶ 155. Plaintiffs intentionally truncated the actual text of TPF's post for purposes of this Count, apparently to falsely infer a call to be present at Hamilton Hall or even on Columbia's campus. The full text of the post is elsewhere in the FAC where it states that TPF, responding to student requests for community support, asked people to rally outside the University, specifically at "116th & Broadway." *Id.* ¶ 106. There is no reference to Hamilton Hall. The FAC references multiple such calls by TPF for rallies *outside of Columbia* at various dates and times.

An additional averment in Count One in conclusory fashion references "on information and belief" that "persons affiliated with TPF" conspired to seize and hold Hamilton Hall, without any particularity, without identifying such persons, and without suggesting the nature of such "affiliation" – a reference so broad as to encompass anyone who has ever been present at the TPF

community center or at a TPF event. *Id.* ¶ 153. Nor does this conclusory, throwaway, reference concretely overwrite the particularized allegation in paragraph 101 as to the specific identity of the alleged co-conspirators, to the notable exclusion of The People's Forum. *Id.* ¶ 101.

**B. Allegations that on April 29, 2024, persons other than The People's Forum entered and seized Hamilton Hall, causing injury to plaintiffs, two non-Jewish janitors who happened to be working overnight shifts**

Plaintiffs allege that on April 29, 2024, a group of individuals that the Plaintiffs refer to as "Occupiers" entered Columbia University's Hamilton Hall to "seize and hold Hamilton Hall until such time as Columbia acquiesced to CUAD's" stated demands. *Id.* ¶ 154.

The FAC does *not* allege that TPF was at the seizure of Hamilton Hall or anywhere on Columbia's campus on the evening of April 29/30, which was closed to the public. *Id.* ¶ 151 (alleging specific named defendants, *excluding The People's Forum*, "directly and intentionally participated in the takeover and Occupation of Hamilton Hall, thereby causing injuries to Plaintiffs"); *id.* ¶ 157 (alleging identities of those who went upon the premises, excluding TPF).

The FAC alleges the seizure occurred "[s]hortly after midnight on April 30, 2024," and the Hall was, naturally, almost empty at that hour. Plaintiffs Mariano Torres and Lester Wilson are "two janitors who were working the overnight shift cleaning the building's classrooms and bathrooms." FAC ¶ 1. The FAC alleges, upon encountering each Plaintiff, unspecified persons demanded each janitor leave the Hall, which each refused. *Id.* ¶¶ 112, 115. After unidentified persons allegedly shoved him and rammed furniture into him, Wilson decided to leave the Hall. *Id.* ¶ 115. Separately, Torres also decided to depart. *Id.* ¶ 118.

Plaintiffs allege that certain Defendants and unidentified persons encountered Torres and assaulted him, striking him, pushing furniture into him, shoving him, and threatening him. FAC ¶¶ 120–24. The FAC alleges unspecified, unidentified persons called him "a Jew-lover." *Id.* ¶ 122. Torres allegedly pushed through and thereupon moved throughout Hamilton Hall. When he reached the ground floor exit of Hamilton Hall, he found that it had been sealed shut with zip ties and blocked with furniture, as part of the seizure of the Hall. *Id.* ¶ 126. Torres moved within the Hall to another exit and found it similarly blocked. *Id.* He moved further about the Hall, reaching

another exit that was tied with zip ties. He demanded to an unnamed defendant that he be allowed to leave, and that defendant "cut the zip ties and let Mr. Torres out." *Id.* ¶ 129.

The FAC alleges that Mr. Wilson moved within the Hall towards the lobby and that certain defendant Does blocked, pushed, or shoved him, or rammed furniture into him. FAC ¶ 131. The FAC alleges that when he moved to the lobby, he found the lobby doors barricaded shut. *Id.* He then moved within the Hall to another exit but found it blocked. *Id.* ¶ 132. The FAC alleges that he demanded to "Let me out." *Id.* ¶ 132. The FAC alleges that, while certain unidentified persons told him "You work for the Jews" and "You're a Zionist," another unidentified defendant "opened a door" and he was able to leave. *Id.* ¶¶ 133–34.

Plaintiffs allege that each suffered physical injury and Post-Traumatic Stress Disorder. *Id.* ¶ 6. Each advances claims of assault, battery, and intentional infliction of emotional distress against certain named defendants, excluding The People's Forum, which is not alleged to have been present at the Hall or participated in these events. *See id.* ¶¶ 180–225.

### C. Allegations that during the period of April 17, 2024, through April 30, 2024, TPF engaged in anti-Zionist speech and called for protest rallies outside of the University

Plaintiffs reference the period starting April 17, 2024, when students and student organizations began the "Gaza Solidarity Encampment" on Columbia's lawn. FAC ¶ 67.

With respect to The People's Forum in connection with the encampment, Plaintiffs do not allege TPF to be present at or an organizer of the encampment. There is no averment that TPF harassed, intimidated, terrorized, or used anti-Jewish slurs against any persons on campus.

Plaintiffs allege that TPF was on the sidelines, engaged in time-honored political expression, including calls for rallies outside of Columbia and advocacy that was anti-Zionist, in support of divestment, and of the encamped students. The FAC catalogues TPF's actions during the time period of April 17, 2024, through April 30, 2024, as follows:

- On April 17, 2024, TPF posted a message encouraging people to support the encampment by, among other things, dropping off food, art, or signs "that support 'divestment/opposition to Zionism,'" or by sending emails to Columbia professors

encouraging them to hold class on the lawn. FAC ¶ 71.

- On that same day, TPF posted a message that praised students for bravely starting the encampment. *Id.* ¶ 72.

- On April 22, 2024, TPF posted a message calling for a rally outside of and "at the gates of Columbia University," specifically at "115 st. & Broadway," in support of student workers who "will walk out on the Columbia campus to demand amnesty for student & faculty protesters & divestment from Israeli apartheid." The People's Forum, (@PeoplesForumNYC), X (Apr. 21, 2024, 6:53 PM), https://perma.cc/S98T-BNDH. This post is incorporated by reference by paragraph 82 in the FAC, which omits the "115 st & Broadway" location. FAC ¶ 82.

- On April 24, 2024, TPF posted a message to rally in support of students and Palestine outside of Columbia University at "116th & Broadway." The People's Forum, (@PeoplesForumNYC), X (Apr. 24, 2024, 12:27 AM), https://tinyurl.com/3jn9ucbw. This post is incorporated by reference by paragraph 84 of the FAC, which omits the "116th & Broadway" location. FAC ¶ 84.

- On April 24, 2024, TPF re-posted a statement by another organization, which Plaintiffs falsely represent to the Court called for violence, *see* FAC ¶ 86, and which called upon students worldwide to mobilize and "through [students'] political, civil, and human rights activities, to intensify field movements in support of the Palestinian cause and to stop the genocidal war in steadfast Palestine, strengthening the Boycott, Divestment, and Sanctions (BDS) movement and protesting in front of American embassies and their symbols." *A Call for a Global Youth Student Battle in Support of Palestinian Resistance and All Solidarity Forces with It: "From Columbia University to Palestine, Revolutionary Youth Against Zionism and Imperialism,"* The People's Forum (Apr. 24, 2024), https://perma.cc/WH6P-2D45 (hereinafter "Global Youth Article") This post is incorporated by reference by paragraph 85 of the FAC, which fails to cite the author of the post and quotes other language out of context. FAC ¶ 85.

- On April 29, 2024, at 11:50 a.m., TPF posted a message urging the public to "STAND WITH STUDENTS BOLDLY STANDING FOR PALESTINE, DESPITE STATE AND UNIVERSITY ADMINISTRATION'S REPRESSION" and to rally outside of Columbia at "115 & Broadway" in support of students and Palestine. The People's Forum, (@PeoplesForumNYC), X (Apr. 29, 2024, 11:50 AM), https://perma.cc/ECA5-9P7D. This post is incorporated by reference by paragraph 93 of the FAC, which omits the "115 & Broadway" location. FAC ¶ 93.

- On April 29, 2024, at 2:55 p.m., TPF reiterated the call for a rally outside Columbia. *Id.* ¶ 94.

- On April 29, 2024, Manolo De Los Santos urged persons to "support our students so that the encampments can go for as long as they can" and to go back out to engage in demonstration activity whenever the call goes out. *Id.* ¶ 100.

- On April 29, 2024, at 11:27 p.m., TPF posted for people to rally outside of Columbia,

at "116th & Broadway." *Id.* ¶ 106 ("We will stand with the students until all of their demands are met! THE PEOPLE ARE WITH PALESTINE!").

- On April 30, 2024, at 12:40 a.m., TPF reported students had seized a building on campus and called for people to join the ongoing rally outside of Columbia at "116th & Broadway" to "stand with the students until all of their demands are met!" People's Forum, Inc. (@PeoplesForumNYC), X (Apr. 30, 2024, 12:40 AM), https://perma.cc/4D5Y-5ZAB. This post is incorporated by reference in the FAC, which omits the "116th & Broadway" location. FAC ¶ 107.

- On April 30, 2024, at 2:02 a.m., TPF posted a message demanding divestment and disclosure by Columbia, urging people to "stay in the streets" to demonstrate support for Palestine and the student movement, demanding "an end to the funding of apartheid and genocide," and encouraging people to rally at 8 a.m. *Id.* ¶ 108.

Plaintiffs characterize the encampment as a "hotbed of anti-Semitism," using their revisionist definition of anti-Semitism as including anti-Zionism. Plaintiffs do not plausibly allege the encampment to be anti-Jewish (to be distinguished from anti-Zionist or critical of Israel), as it pleads time and again that the encampment was constituted and organized by a significant Jewish presence. *See* FAC ¶¶ 8, 11,15, 24, 26, 41, 47, 48, 49, 56, 58, 67, 76, 78, 99, 152, 156, 166. (alleging Jewish Voice for Peace organized or participated in the encampment).

The FAC avers isolated acts of anti-Jewish slurs or harassment by unidentified persons,[2] including without source or citation, and ignores the multitude of published articles characterizing the encampment as comprised of diverse and spirited students that was warmly inclusive.[3]  Encamped students broke to observe the Pesach seder with its deeply Jewish

---

[2] Without citation, Plaintiffs allege a campaign to "'take[] back' Columbia University's campus from Jews and 'Zionists'." FAC ¶ 2. The quotations are absent around the reference to "Jews," reflecting it does not purport to having actually been said. The actual quotation is more completely alleged that after first encamping on East Butler Lawn on April 17, 2024, student organizers issued a statement that the encampment had "taken back [the campus] in the spirit of the '68 occupation of Hamilton Hall." *Id.* ¶ 11. The reference to "Zionists" in FAC ¶ 2 has no evident source.
Plaintiffs allege that on November 9, 2023, a time period having no connection to the April, 2024, encampment or the takeover of Hamilton Hall, unidentified persons with no alleged connection to TPF or any co-defendant used vicious anti-Jewish slurs. *Id.* ¶ 46.
[3] *See, e.g.,* Kholood Eid, Hammer & Hope, *The Beauty of the Gaza Encampment at Columbia,* Hammer & Hope (Summer 2024), https://perma.cc/FH8E-MCEW; Najib Aminy, *My Week Inside Columbia's Gaza Solidarity Encampment,* Mother Jones (Apr. 26, 2024) https://perma.cc/6PFA-4FEG, Brett Wilkins, *750+ Jewish Students Affirm Support for Pro-*

narrative of escape from oppression.[4] The FAC cites a journal article which reports that encamped students were doxed, had their names published on a van, on "terror lists," and received death threats. The article reports the encampment was inclusive, hosting webinars with students from Birzeit University in Israel, holding vigils for Gaza, and holding anti-Zionist shabbat dinners. This peaceful organizing was met by verbal abuse from pro-Zionist students who stalked Hijabi and Palestinian students, calling them "terrorists" and "rapists."[5] Columbia University President condemned reported "anti-Semitism, *Islamophobia*, [and] bigotry *against Palestinians* and Israelis" by members of Columbia's community. *Id.* ¶ 44 (italics added).

## III.    THE LEGAL FRAMEWORK OF 42 U.S.C. § 1985(3)

Section 1985(3), a Reconstruction-era law designed to address racist violence perpetuated by the Ku Klux Klan, establishes a narrow cause of action to hold defendants liable for a race- or class-based conspiracy to violate certain constitutional rights. *See United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 836 (1983).

To assert a § 1985(3) claim, a plaintiff must allege "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is ... deprived of any right of a citizen of the United States." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993), 1087 (2d Cir. 1993) (citing *United Bd. of Carpenters*, 463 U.S. at 828–29).

"[I]n order to prove a private conspiracy in violation of the first clause of § 1985(3), a plaintiff must show, *inter alia*, (1) that 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action,' *Griffin v. Breckenridge*,

---

Palestinian Campus Protests, Common Dreams (May 7, 2024), https://perma.cc/B65A-995P.

[4] *See, e.g.,* Sharon Otterman, et al, *A Night Different From Others as Campus Protests Break for Seder*, N.Y. Times (Apr. 22, 2024), https://perma.cc/YG5G-R3FT; Anna Betts, *Growing number of Jewish American groups speak out over Gaza famine*, Guardian (Aug. 2, 2025), https://perma.cc/8X3G-QAMY.

[5] FAC ¶ 68 n.25 (Dasha M., Luma Washou, Parziz Behrangi, Caroline Reynolds & Amal Haddad, *Palestine is the Vanguard for our Liberation: Insights from the Students' Intifada at Columbia University*, 33 Middle E. Critique 487, 489 (2024)).

403 U.S. 88, 102 (1971), and (2) that the conspiracy 'aimed at interfering with rights' that are 'protected against private, as well as official, encroachment, *Carpenters v. Scott*, 463 U.S. 825, 833, (1983).'" *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–68 (1993).

The Supreme Court has been emphatic that these requirements are to keep § 1985(3) from being applied broadly as a "general federal tort law." *Griffin*, 403 U.S. at 102.

Applying reasoning based on original intent, courts hold that although modern thinking rejects the classification of Jews as a race, Jews may sue for racial discrimination under 42 U.S.C. § 1985(3), because at the time of the adoption of Reconstruction Era federal civil rights statutes, Jews were then-considered a distinct racial group based on Jews' distinctive "ancestry or ethnic characteristics." *Jews for Jesus, Inc. v. Jewish Cmty. Rels. Council of New York, Inc.*, 968 F.2d 286, 291 (2d Cir. 1992) (citing *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987) and *Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 617 (1987)). Class-based animus may include discrimination on the basis of religion, *Jews for Jesus, Inc.*, 968 F.2d at 291, although there are no allegations in the FAC related to religious practices.

The original intent of the 42nd Congress that enacted the Civil Rights Act of 1871 (commonly known as the Ku Klux Klan Act), including what is now codified as Section 1985(3), had nothing to do with preventing animus against the modern state of Israel, which came into existence in 1948.

There exists a mostly twenty-first century pro-Zionist political movement to expand and revise the scope of the term "anti-Semitism" beyond anti-Jewish hatred to include expression critical of Israel, that opposes its existence as an apartheid state, or that claim the existence of the State of Israel is a racist endeavor, in an effort to restrict or punish such speech and views.

This political argument is ahistoric and fallacious. Responding to a 2023 resolution by the U.S. House of Representatives declaring that "anti-Zionism is antisemitism," Pulitzer Prize winning historian, and Jewish American, Benjamin Moser, wrote: "When learning of this vote, many people familiar with Jewish history might have suppressed a sardonic laugh. Anti-Zionism, after all, was a creation of Jews, not their enemies." Benjamin Moser, *Anti-Zionism isn't the same*

10

*as antisemitism. Here's the history*, Wash. Post (Jan. 2, 2024), https://perma.cc/3SLB-3VXT.

> Before World War II, Zionism was the most divisive and heatedly debated issue in the Jewish world. Anti-Zionism had left-wing variants and right-wing variants — religious variants and secular variants — as well as variants in every country where Jews resided. For anyone who knows this history, it is astonishing that, as the resolution would have it, opposition to Zionism has been equated with opposition to Judaism — and not only to Judaism, but to hatred of Jews themselves. But this conflation has nothing to do with history. Instead, it is political, and its purpose has been to discredit Israel's opponents as racists.

*Id.*

Defendant, for purposes of precision in this motion, references "anti-Jewish" animus to mean class-based animus against Jews as intended under 42 U.S.C. § 1985(3), a scope which excludes anti-Israel or anti-Zionist animus or speech.

## IV.    ANTI-ZIONISM IS NOT ANTI-JEWISH

Plaintiffs' counsel have presented the Court with a sprawling complaint that smears with such a broad brush that it forces the legal reader to parse with attentive precision.

Plaintiffs use "anti-Zionist," "anti-Israel," and "anti-Semitic" interchangeably, FAC ¶ 154, and unreliably, including to mischaracterize CUAD's demands of "divestment, financial transparency, and amnesty" as all three. *Id.* ¶ 135. None of these demands are anti-Jewish.

Courts have rejected attempts to equate anti-Semitism with anti-Zionism. *Landau v. Corp. of Haverford Coll.*, 780 F. Supp. 3d 548, 555 (E.D. Pa. 2025) ("I reject Plaintiffs' embedded proposition that any anti-Israel speech is intrinsically antisemitic, because reasonable people acting in good faith can challenge decisions of the Israeli government without harboring antisemitic views."); *Canel v. Art Inst. of Chicago*, No. 23 CV 17064, 2025 WL 564504, at *8 (N.D. Ill. Feb. 20, 2025) ("[T]he Court cannot … conclude that the banners and flyers" which "reflect[ed] reflect political points of view critical of the Israeli government," "represent discriminatory harassment of plaintiff on the ground of her Jewish or Israeli identities."); *Students for Just. in Palestine v. Abbott*, 756 F. Supp. 3d 410, 425 (W.D. Tex. 2024) (finding illegal viewpoint-based discrimination where university speech code adopted a definition that defined anti-Zionism to constitute anti-Semitism, drawing from a working definition issued by

the International Holocaust Remembrance Association that identified "claiming the State of Israel [to be] a racist endeavor" as anti-Semitic).

For anti-Zionist Jews, many find anti-Zionist expression a manifestation of their Jewish identity and values. *See, e.g.*, Ella Ben Hagai and Eileen L. Zurbriggen, *Between Tikkun Olam and Self-Defense: Young Jewish Americans Debate the Israeli-Palestinian Conflict*, Journal of Social and Political Psychology, 2017, Vol 5(1) (2017) (students who support anti-Zionist movements invoke rootedness in deep connections to Jewish tradition, Jewish identity, and Jewish education, including with the values of *tikkun olam*, reparation of a broken world, and a Jewish commitment to social justice). Precluding any suggestion of race-based or religion-based bias being inherent in anti-Zionism, the Orthodox Jewish group Neturei Karta invokes the Torah as their basis for opposing the existence of the State of Israel and Zionism. *See* Neturei Karta, Our Mission (last visited Sept. 18, 2025), https://perma.cc/6AY3-RC8R.

If calling Israel's war against Gazans genocide and constituting massive war crimes is anti-Semitic, then former Israeli Prime Minister Ehud Olmert must be so counted.[6] If accusing Israel of committing war crimes and ethnic cleansing is anti-Semitic, then so is former Israeli Minister of Defense Moshe Yaalon, who stated that "war crimes are being committed" and that the Israeli government was seeking "to conquer, to annex, to carry out ethnic cleansing."[7] B'Tselem, the Israeli human rights group, is also anti-Semitic under Plaintiffs' approach.[8]

Speech describing Israel's violence against Gazans as genocide does not constitute an anti-Jewish slur.[9] Speech describing the proposal to expel over two million Gazans from Gaza as

---

[6] Ehud Olmert, *It's time for Israel to halt its war of devastation in Gaza*, Guardian (May 30, 2025), https://perma.cc/F7NV-N2CF.

[7] Jennifer Jett, *Former Israeli defense minister accuses his country of committing war crimes in Gaza*, NBC News (Dec. 2, 2024), https://perma.cc/P5YR-VM7A.

[8] *See* B'Tselem, *From declaration to action: Israel is carrying out ethnic cleansing in Gaza* (Apr. 3, 2025), https://perma.cc/QF6L-VTDD. This human rights organization, whose views are expressly derived from the Jewish religion, is also anti-Semitic by Plaintiffs' reasoning.

[9] *See, e.g.*, *Def. for Child. Int'l-Palestine v. Biden*, 714 F. Supp. 3d 1160, 1163 (N.D. Cal.), *aff'd*, 107 F.4th 926 (9th Cir. 2024) ("[T]he current treatment of the Palestinians in the Gaza Strip by the Israeli military may plausibly constitute a genocide in violation of international

ethnic cleansing also is not an anti-Jewish slur but principled opposition to prohibited ethnic cleansing.[10] Speech, even fiery rhetoric, calling for the dismantling or destruction of the construct of the modern nation-state of Israel is not anti-*Jewish* when opposition to this construct is anti-Zionism at its ideological essence. Speech opposing a Zionist nation-state, while offensive to a sector of Jews and non-Jews including some evangelical Christians, is a call embraced by a sector of other Jews and non-Jews and which, for such proponents, hearkens to historic calls to dismantle the Apartheid state structure of South Africa.

## V.    ARGUMENT

### A. Plaintiffs' 42 U.S.C. § 1985(3) count should be dismissed for failure to state a claim

#### 1. *Plaintiffs' Section 1985(3) claims must be dismissed where Plaintiffs fail to allege that they are Jewish or were perceived to be Jewish*

To advance a claim under §1985(3), a Plaintiff must allege that they are a member of the protected class invoked, i.e., here, that Plaintiffs are Jewish. *See* FAC ¶ 148 (defining the "class"

---

law."); United Nations Human Rights Council, *Legal Analysis of the conduct of Israel in Gaza pursuant to the Convention on the Prevention and Punishment of the Crime of Genocide,* (Sept. 16, 2025), https://perma.cc/W3MP-3FEH (Israel has committed genocide in Gaza, says U.N. Commission of Inquiry); International Association of Genocide Scholars, IAGS Resolution on the Situation in Gaza (Aug. 31, 2025), https://perma.cc/AW2A-TUQJ ("Israel's policies and actions in Gaza meet the legal definition of genocide"); Physicians for Human Rights Israel (PHRI), *Destruction of Conditions of Life: A Health Analysis of the Gaza Genocide*, https://perma.cc/T46G-PRA2 ; B'Tselem, *Our Genocide* (Jul. 2025), https://perma.cc/2Q7X-N9R7; Amnesty International, *'You Feel Like You Are Subhuman': Israel's Genocide Against Palestinians in Gaza*, (Dec. 2024), https://perma.cc/VCW4-YASZ ; Human Rights Watch, *Extermination and Acts of Genocide: Israel Deliberately Depriving Palestinians in Gaza of Water* (Dec. 19, 2024), https://perma.cc/3QZL-JFCK ; Médecins Sans Frontières (MSF) (Doctors Without Borders), *Gaza: Life in a Death Trap*, (Dec. 2024), https://perma.cc/CD8X-YFFZ; Francesca Albanese, *Anatomy of a Genocide: Report of the Special Rapporteur on the situation of human rights in the Palestinian territories occupied since 1967* (Jul. 1, 2024), https://perma.cc/N4Z4-FUTJ.

[10] B'Tselem, *From declaration to action: Israel is carrying out ethnic cleansing in Gaza* (Apr. 3, 2025), https://perma.cc/QF6L-VTDD; Human Rights Watch, *Gaza: Latest Israeli Plan Inches Closer to Extermination* (May 15, 2025), https://perma.cc/VT8E-YDQF; Rory O'Neill, Politico, *Trump's plan for 'ethnic cleansing' in Gaza is illegal, says UN investigator*, (Feb. 9, 2025), https://perma.cc/84PQ-79NN; Laura Kelly, The Hill, *Pair of Senate Democrats charge Israel with 'ethnic cleansing' of Palestinians* (Sept. 5, 2025), https://perma.cc/JK9W-HX52?type=image.

as "people who are [Jews] or are perceived to be Jews or supporters of Jews").

Failure to allege membership in the protected class at issue requires dismissal. *See Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) ("the district court properly dismissed Dolan's conspiracy claim as he failed to allege membership in a class protected under Section 1985(3)."); *Jews for Jesus, Inc.*, 968 F.2d at 292 (dismissing claims of race-based discrimination under § 1985(3) where "JFJ's members include both Jews and non-Jews" since non-Jews cannot claim such protections as plaintiffs); *AYDM Assocs., LLC v. Town of Pamelia*, 205 F. Supp. 3d 252, 274 (N.D.N.Y. 2016), *aff'd*, 692 F. App'x 78 (2d Cir. 2017) (dismissal required where "Plaintiff does not allege or produce any evidence that it is a member of any class, race-based or otherwise"); *Puglisi v. Underhill Park Taxpayer Ass'n*, 947 F. Supp. 673, 692 (S.D.N.Y. 1996), *aff'd sub nom. Puglisi v. Underhill Park Taxpayers Assoc.*, 125 F.3d 844 (2d Cir. 1997).

Plaintiffs disclaim being Jewish. FAC ¶ 4 (Plaintiff Mariano Torres "is Latino. He is not Jewish"); *id.* ¶ 5 (Plaintiff Lester Wilson "is African-American. He is not Jewish"). Neither Plaintiff alleges they were perceived to be Jewish.

Plaintiffs attempt to broadly and improperly define the alleged protected class as "consisting of people who are [Jews] or are perceived to be Jews or supporters of Jews." *Id.* ¶ 144. This definition fails on account of being wholly indeterminate. *See Aulson v. Blanchard*, 83 F.3d 1, 6 (1st Cir. 1996) (citing *Gleason v. McBride*, 869 F.2d 688, 695 (2d Cir. 1989) ("There is simply no way to characterize this group as an identifiable segment of the community by reference to any objective criteria, and, hence, it cannot serve as a cognizable class within the purview of § 1985 (3)."). Under this unconstrained definition, Plaintiffs can claim virtually anyone to be among the targeted class, as they do.

There is no precedent in the Second Circuit for allowing a non-class member "supporter" of a protected class to bring a § 1985(3) claim. To the contrary, the Second Circuit and district courts in this Circuit have repeatedly and explicitly required that § 1985(3) plaintiffs be *members* of the protected class at issue. *See Dolan*, 794 F.3d at 296; *Jews for Jesus, Inc.,* 968 F.2d at 292; *AYDM Assocs.*, 205 F. Supp. 3d at 274; *Puglisi*, 947 F. Supp. at 692.

14

*Puglisi*, a district court case affirmed by the Second Circuit, held that "plaintiff cannot bring this § 1985(3) claim because, although he has alleged that defendants acted and conspired pursuant to a class or race based discriminatory animus, plaintiff is not a member of the class protected by the statute nor a member of the race triggering the alleged racial discrimination." *Puglisi*, 947 F. Supp. at 692. The plaintiff, a white landlord, alleged that the defendants conspired to pressure him to evict his Black tenants because of their race, including by spray painting a vicious racist slur on his property, and that this conspiracy caused him harm. *Id.* The Court held that as a white non-class member Puglisi could not invoke or bring claims under Section 1985(3), notwithstanding the evident racist animus of defendants against African-Americans. "The court has found no case extending § 1985(3) to a non-class member." *Id.* at 692.

Very few courts, none of which are within the Second Circuit, have allowed persons who have even demonstrably and actively engaged in "support" for protected classes to advance claims under Section 1985(3). *See, e.g., Sines v. Kessler*, 324 F. Supp. 3d 765, 780–81 (W.D. Va. 2018). This enlargement has not been adopted and has been rejected by the courts in the Second Circuit. The instant FAC presents no such allegations of expressive or active support by Plaintiffs of Jews. Plaintiffs allegedly said nothing about Jews in the underlying events.

The FAC is devoid of allegations that either Plaintiff engaged in expression or conduct that was supportive of Jews. Contradicting or undermining any such suggestion, were it to be made, the FAC alleges with particularity that each was working as a janitor who randomly happened to be present and "hard at work inside Hamilton Hall," FAC ¶¶ 4–5, "carrying out his job duties, *id.* ¶ 163, and was injured when a series of events happened upon them. *See also id.* ¶¶ 144–45 (each is receiving Workers Compensation payments for their claimed injuries, claims which may only be made for "accidental injuries arising out of and in the course of employment" under New York Workers Compensation Law §2(7)).

Trying to sidestep this fatal defect, the FAC alleges that the "Occupiers were motivated by *perceptions* that Mr. Torres and Mr. Wilson supported Jews." *Id.* ¶ 159 (italics added). TPF is not alleged to have entered Hamilton Hall or ever encountered Plaintiffs, *see, e.g., id.* ¶ 156, and

15

cannot have held such perceptions. There is no authority from any jurisdiction that holds that non-supporters of a protected class can advance a claim under Section 1985(3) based on the averment that a defendant perceived or imagined the plaintiff to be a supporter.

### 2. Plaintiffs' FAC contradicts any claim of Jewish-based animus in the alleged plot to seize Hamilton Hall through violent means

The FAC fails to plausibly allege that the alleged conspiracy was "motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus.'" *Mian*, 7 F.3d at 1088 (quoting *United Bhd. of Carpenters*, 463 U.S. at 828).

The gravamen of the FAC is that certain defendants, i.e., not The People's Forum, "set into motion their coordinated plan to seize Hamilton Hall," FAC ¶ 101. The purpose of the plan was to "seize and hold Hamilton Hall until such time as Columbia acquiesced to" policy demands, *id.* ¶ 154, that is, divestment, transparency, and amnesty, *id.* ¶ 135.

This is not an alleged plot involving a plan to do violence to Jews, notwithstanding Plaintiffs' foul and baseless smears casting defendants as the Ku Klux Klan or TPF as engaging in Nazi genocide or genocidal ideology.

The alleged conspiratorial plot was to seize Hamilton Hall and such plot only incidentally contemplated violence but not violence against Jews, *per se*, and not violence based on class-animus as is necessary for a Section 1985(3) claim. *Id.* ¶ 150 (alleging plot countenanced violence against "anyone" regardless of being Jewish and regardless of being "in the targeted class"); *id.* ¶ 102 (countenanced violence incidentally against employees who posed obstacles).

Such allegations negate the necessary predicate for the class-based conspiracy claims permitted by § 1985(3), as they explicitly plead that violence was <u>not</u> class-based. *See Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir. 1988) ("these allegations tend to contradict the race or ethnicity claim because they suggest the sanction . . . was imposed on all those who remained in Buttrick Hall without regard to their race or ethnicity").

16

### 3. *Plaintiffs have failed to allege cognizable class-based animus against TPF under Bray v. Alexandria Women's Health Clinic*

Plaintiffs' unjustified and conclusory characterizations of anti-Jewish animus against TPF fail to meet the plausibility threshold. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009); *Brito v. Arthur*, 403 F. App'x 620, 621 (2d Cir. 2010); *Mian*, 7 F.3d at 1087 n.4 (dismissing Section 1985 and 1986 claims where plaintiff offered no "more than conclusory allegations that he was discriminated against because of his race"); *Masri v. Thorsen*, No. 17-CV-4094 (KMK), 2020 WL 1489799, at *8 (S.D.N.Y. Mar. 27, 2020) (dismissing Section 1985 claim where "allegations related to discriminatory animus are conclusory"); *Reyes v. Fairfield Props.*, 661 F. Supp. 2d 249, 268 (E.D.N.Y. 2009) (conclusory race-based allegations do not meet plausibility standard); *Hickey-McAllister v. British Airways*, 978 F. Supp. 133, 139 n.4 (E.D.N.Y. 1997).

Plaintiffs fail to plausibly allege anti-*Jewish* animus against TPF, relying instead on TPF's statements that identify its political motivations as anti-*Zionist*. FAC ¶ 71 n. 28 (citing People's Forum, Inc. (@PeoplesForumNYC), X (Apr. 17, 2024, 3:20 PM), https://perma.cc/UAW8-F97F (call to "Bring art or signs to support Palestine & divestment/opposition of Zionism. Cover the lawn in solidarity art!")); *id.* ¶ 82 n.34 (citing The People's Forum, X, *supra*, (Apr. 21, 2024, 6:53 PM) (calling for rally outside gates of Columbia at 115th & Broadway to "demand amnesty for student & faculty protesters & divestment from Israeli apartheid")); *id.* ¶ 85 n.37 (citing Global Youth Article, *supra* (republishing third party call for youth to organize against "a war of extermination against the Palestinian people, a war that has exceeded 200 days of bombing, destruction, displacement, and brutalization, exposing the truth of American imperialism and its Zionist counterpart")); *id.* ¶ 93 n.45 (citing The People's Forum, X, *supra*, (Apr. 29, 2024, 11:50 AM) (calling for rally at "115th and Broadway" to "stand with students boldly standing for Palestine")); *id.* ¶ 94 ("stand with Palestine and with the movement against genocide and apartheid"); *id.* ¶ 106 (citing The People's Forum, X, *supra*, (Apr. 29, 2024, 11:27 PM) (call for rally outside Columbia at "116th & Broadway" to "stand with the students until their demand are met! THE PEOPLE ARE WITH PALESTINE")); *id.* ¶ 107 (report that rally outside of Columbia was ongoing, calling to "stand with the students"); *id.* ¶

108 (calling on Columbia to "DISCLOSE, DIVEST" and urging persons to "stay in the streets for Palestine and to support the student movement").

The Supreme Court has foreclosed what Plaintiffs seek to do, which is to use anti-Zionist advocacy as a proxy for class-based or, as here specifically, anti-Jewish animus.

The Supreme Court squarely rejected the viability of a Section 1985(3) claim against anti-abortion demonstrators who engaged in conspiratorial and plainly violent illegal obstructions of access to women's health care clinics. *Bray*, 506 U.S. at 266-67. There, women's health clinics urged the court to find class-based animus alleging that the evident animus against women seeking abortions constituted, or could substitute for, animus against women in general.

> Whatever one thinks of abortion, it cannot be denied that there are common and respectable reasons for opposing it, other than hatred of, or condescension toward (or indeed any view at all concerning), women as a class -- as is evident from the fact that men and women are on both sides of the issue, just as men and women are on both sides of petitioners' unlawful demonstrations.

*Id.* at 270.

Whatever one thinks of Zionism or the warfare conducted by Israel against Palestinians there are "common and respectable reasons" for opposing each, other than hatred of Jews as a class – as is evident from the fact that Jews and non-Jews are on both sides of these issues. The same holds true for expressed support of the Columbia student encampment.

Section 1985 does not recognize protected class status based on an allegation of discrimination due to political views. *Id.* at 268-70; *United Bhd. of Carpenters*, 463 U.S. at 836 (rejecting view that "§ 1985(3) provided a remedy for every concerted effort by one political group to nullify the influence of or do other injury to a competing group by use of otherwise unlawful means" lest the floodgates be opened to such novel federal claims); *Gleason*, 869 F.2d at 694–95 ("those who are in political and philosophical opposition to [the defendants], and who are, in addition, outspoken in their criticism of the [defendants'] political and governmental attitudes and activities do not constitute a cognizable class under section 1985") (internal citation

omitted); *Turner v. Boyle*, 116 F. Supp. 3d 58, 95 (D. Conn. 2015) (no cognizable Section 1985 class based on "discrimination on the basis of one's political views").

Furthermore, Section 1985(3) classes must be defined by "inherited or immutable characteristics," not by beliefs, behaviors, or support. *Dolan*, 794 F.3d.at 296 ("jailhouse lawyers" is not a protected class); *see also Bray*, 506 U.S. at 267–68 ("women seeking abortion" is not a protected class); *Tavoloni v. Mount Sinai Med. Ctr.*, 198 F.3d 235 (2d Cir. 1999) ("whistleblowers" is not a protected class); *McLoughlin v. Altman*, No. 92 CIV. 8106 (KMW), 1993 WL 362407, at *6 (S.D.N.Y. Sept. 13, 1993), *aff'd*, 22 F.3d 1091 (2d Cir. 1994).

#### 4.  *Plaintiffs do not properly allege the violation of a protected right*

Section 1985(3) "was not intended to provide a federal remedy for 'all tortious, conspiratorial interferences with the rights of others.'" *Dolan*, 794 F.3d at 296 (quoting *Griffin*, 403 U.S. at 101–02); *see also Doe v. AR*, No. 21-CV-06353-FPG, 2021 WL 5416235, at *5 (W.D.N.Y. Nov. 19, 2021).

The Supreme Court and the Second Circuit have recognized only two federal constitutional rights for purposes of a § 1985(3) claim that are protected against private encroachment: the right to be free from involuntary servitude and the right to travel. *Bray*, 506 U.S. at 263; *Spencer v. Casavilla*, 903 F.2d 171, 175 (2d Cir. 1990).

Plaintiffs claim that the alleged conspiracy had the purpose of violating each's "right to travel" and "right to be free from racial violence," FAC ¶ 149, fails as described below.

##### a.  *Plaintiffs do not allege they were engaged in interstate or intrastate travel and, therefore, have failed to allege a violation of the right to travel*

There is no allegation that Plaintiffs were in the process of interstate or intrastate travel when they were allegedly assaulted. FAC ¶¶ 160–61; *id.* ¶¶ 1, 4, 5 (each was within the building still working the night shift); *id.* ¶¶ 112, 115 (each refused initial demands to leave, with Wilson stating, "No, you need to leave. I work here.").

To the extent Plaintiffs allege each was "prevented [] from freely moving within the building," *id.* ¶¶ 160–61, obstructions to movement within a building or within a private campus do not implicate the constitutional right to travel. *See Gang v. Zhizhen*, No. 3:04CV1146 (RNC),

2016 WL 1275026, at *4 (D. Conn. Mar. 31, 2016), *adhered to on reconsideration sub nom.*
*Chen Gang v. Zhao Zhizhen*, No. 3:04-CV-1146 (RNC), 2017 WL 4366967 (D. Conn. Sept. 30,
2017) ("threats, intimidation, and attacks against Falun Gong practitioners" did not implicate the
right to travel where they "occurred in Falun Gong communities and religious centers, … rather
than as Falun Gong practitioners were attempting to exercise a right to travel"); *Campbell v.
Westchester Cnty.*, No. 96 CIV. 0467 (JSM), 1997 WL 773702, at *2 (S.D.N.Y. Dec. 11, 1997)
("The right [to travel] certainly would not protect the plaintiff's" movement within a building).

 To the extent Plaintiffs allege that certain barricaded conditions "prohibited [Torres] from
leaving his workplace so he could return to New Jersey, where he resides," FAC ¶ 160, and
likewise for Wilson to return to his home in Queens, *id.* ¶ 161, the averments are that, although
experiencing delay in departure, certain unidentified Defendants removed obstacles to each
Plaintiff's departure and permitted each to leave the building. *Id.* ¶¶ 129, 134.

 According to the FAC, the barricades were, by intent, to prevent entrance into Hamilton
Hall so that those within could "seize and hold Hamilton Hall" until political concessions by the
University were made, *id.* ¶ 154, not to prevent exit.

 The cases that recognize private violation of a constitutional right of travel implicate
violations that occurred while persons were *en route* traveling from one geographic place to
another. *Griffin*, 403 U.S. at 106 (racist attack while the plaintiffs were "traveling upon the
federal, state, and local highways" and "intended to drive out-of-state civil rights workers from
the State"); *Spencer*, 903 F.2d at 175 (racist attack against plaintiff committed while en route
between Westchester County to Kings County and "on the public streets in Coney Island").

 The FAC avers a temporary obstruction to movement from one location on a private
University campus, i.e., Hamilton Hall, to the campus more generally. There is no public road or
highway involved in this impediment anywhere. There is no allegation that a unique destination,
such as a medical facility, at the end of public roadway travel of a significant distance was
blocked. *See, e.g.*, *Campbell*, 1997 WL 773702, at *2.

**b.  The "right to be free from racial violence" is not cognizable under § 1985(3)**

Several district courts in this Circuit explicitly reject "freedom from violence" § 1985(3) claims. *AR*, 2021 WL 5416235 at *5 (Plaintiff's right to "the security of her person" could not form the basis for a § 1985(3) claim, as claims of physical injury and sexual assault are not "safeguarded from private encroachment in the Federal Constitution"); *Hogan v. Cnty. of Lewis, N.Y.*, No. 7:11-CV-0754 LEK/ATB, 2015 WL 1400496, at *12 (N.D.N.Y. Mar. 26, 2015), *aff'd sub nom. Okudinani v. Rose*, 779 F. App'x 768 (2d Cir. 2019) (Plaintiff's right "to be free from intimidation and assault motivated by race and/or association with minorities" could not form the basis for a Section 1985(3) claim); *Emanuel v. Barry*, 724 F. Supp. 1096, 1103 (E.D.N.Y. 1989) (finding plaintiffs' "rights to be free from racial violence, not to be terrorized, and to be secure in their personal effects and property" did not state claim cognizable under § 1985).

**5.  The alleged conspiracy was not aimed at violating Plaintiffs' rights**

The Supreme Court in *Bray* held that under § 1985(3), it is not sufficient to allege that a constitutionally protected right has been affected. 506 U.S. at 275. The Plaintiff must plausibly allege that "the predominant purpose of the conspiracy was interference with, or punishment for, the exercise of th[ose] right[s]." *Spencer v. Casavilla*, 44 F.3d 74, 79 (2d Cir. 1994). To state a § 1985(3) conspiracy, the conspiracy must be "aimed at" violating the plaintiff's protected rights. *Bray*, 506 U.S. at 275. "A conspiracy is not 'for the purpose' of denying equal protection simply because it has an effect upon a protected right." *Id.* The agreement must be to deprive plaintiffs of their cognizable rights. *Id.* ("impairment must be a conscious objective of the enterprise").

There is no plausible allegation that a conspiratorial aim was to deprive Plaintiffs of their right to travel or to be free from violence on the basis of being Jewish. The alleged purpose was to seize the Hall to pressure Columbia to acquiesce to policy demands. FAC ¶ 154. Any alleged effect on Plaintiffs' rights was merely incidental. *See Spencer*, 44 F.3d at 79; *see also Corsi v. Gestone*, No. 220CV4799DRHSIL, 2021 WL 5416623, at *3 (E.D.N.Y. Nov. 19, 2021); *Jenkins v. Miller*, 983 F. Supp. 2d 423, 461 (D. Vt. 2013).

*StandWithUs Ctr. for Legal Just. v. Massachusetts Inst. of Tech.*, 742 F. Supp. 3d 133, 143 (D. Mass. 2024) (pending appeal), a recent case rejecting a § 1985(3) claim in the context of pro-

Palestine campus protests, is instructive. There, the plaintiff alleged "student groups acted in concert to plan protest events advocating their shared views" and some Jewish students claimed that "'the clear practical effect' of the protests 'was to impede the rights of Jewish and Israeli students on campus.'" *Id.* at 143–44. Those allegations were insufficient to "raise[] a plausible inference that the groups agreed to plan the events 'at least in part for the very purpose of' depriving plaintiffs of their civil rights." *Id.* at 143 (quoting *Bray*, 506 U.S. at 276).

### 6. The FAC does not plead that TPF joined a conspiracy to occupy Hamilton Hall through class-based violence

To plead a conspiracy, a plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (quoting *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000)). This minimum pleading standard is not met here.

"A plaintiff does not plausibly allege [a conspiracy] claim by simply levying a factually unsupported accusation that there is a conspiracy afoot." *Johnson v. Comm'n on Hum. Rts. & Opportunities*, No. 3:24-CV-728, 2024 WL 3649743, at *2 (D. Conn. July 8, 2024), *appeal dismissed*, No. 24-2050, 2025 WL 2233884 (2d Cir. Feb. 20, 2025). Nor can the plaintiff rely on "conclusory and vague" assertions. *Thomas v. Roach*, 165 F.3d 137, 147 (2d Cir. 1999); *see also Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977) ("Diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.").

The heart of the conspiratorial agreement allegations to seize Hamilton Hall are set forth at FAC ¶¶ 101–02, where co-conspirators are identified to the exclusion of TPF.

With a Kafka-esque flourish, the FAC claims TPF is a "member" of a shadowy and "untraceable" network of anti-Semitic and terroristic actors, *see id.* ¶ 147, suggesting the absence of evidence of such a network can be used to allege or evidence TPF's membership. *See Turner*, 116 F. Supp. 3d at 965 (rejecting as conclusory claims that "shadowy and secretive relationships and power dichotomies exist among the individuals who allegedly caused him harm").

The Plaintiffs make some allegations of anti-Jewish incidents (to include plainly anti-Zionist expression) over a period of months at Columbia and without tying that to the alleged conspiratorial plot initiated on April 29, 2024, to seize Hamilton Hall, *id.* ¶¶ 101–02, or to TPF.

Many allegations simply invoke "Defendants" generically. *See, e.g.*, *id.* ¶¶ 2, 7, 8, 148–50 162, 169, 176–77. Dragnet pleading tactics are conclusory and lack particularity as to TPF.

### 7. *Plaintiffs' "information and belief" averments should be ignored*

"A litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory. Those magic words will only make otherwise unsupported claims plausible when 'the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible.'" *Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018) (quoting *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)). "Courts in this Circuit look unfavorably upon conclusory pleadings made on information and belief." *Brodie v. Green Spot Foods, LLC*, 503 F. Supp. 3d 1, 13 (S.D.N.Y. 2020) (collecting cases).

"[I]nformation and belief" pleadings "must be accompanied by a statement of the facts upon which the belief is founded." *Schorr v. Dopico*, 205 F. Supp. 3d 359, 363 (S.D.N.Y. 2016), *aff'd*, 686 F. App'x 34 (2d Cir. 2017); *see also Brodie*, 503 F. Supp. 3d at 13. A complaint that "attempts to implicate … defendants in wide-ranging conspiracies, clearly without foundation, to violate [Plaintiffs'] constitutional rights" does not plausibly allege a § 1985(3) claim.

The allegations made upon information and belief do not concern facts "peculiarly within the possession and control of the defendant [i.e., TPF]." *Arista Recs.*, 604 F.3d at 120.

The entire presentation of a conspiratorial set of communications or meetings by co-conspirators *excluding TPF*, gives rise to no suggestion that TPF possesses information. *See* FAC ¶ 101. The one aspect <u>not</u> on information and belief is the allegation that TPF had an April 29, 2024, meeting that was public, attended by media, was reported publicly on, and had not the slightest mention of Hamilton Hall or an alleged conspiratorial plot.

**B.  Plaintiffs' 42 U.S.C. § 1986 claim should be dismissed for failure to state a claim.**

Section 1986 provides a cause of action against anyone who "having knowledge that any of the wrongs conspired to be done and mentioned in section 1985 are about to be committed and having the power to prevent or aid, neglects to do so." _Mian_, 7 F.3d at 1097 (quoting _Katz v. Morganthat_, 709 F. Supp. 1219, 1236 (S.D.N.Y.), _aff'd in part and rev'd in part on other grounds_, 892 F.2d 20 (2d Cir. 1989)).

"[A] § 1986 claim must be predicated upon a valid § 1985 claim." _Mian_, 7 F.3d at 1087; _see also Thomas_, 165 F.3d at 147; _Brown v. City of Oneonta, New York_, 221 F.3d 329, 341 (2d Cir. 2000). As described above, not only does the FAC fail to allege TPF's participation in a § 1985 conspiracy, it fails to properly plead such a class-based conspiracy existed.

Even if Plaintiffs had plausibly pled the existence of a § 1985(3) conspiracy involving the occupation of Hamilton Hall, they do not aver that TPF was a co-conspirator, FAC ¶ 101, advance no specific allegations that TPF had knowledge, and no allegations that would support an inference that TPF would have had power to prevent such a conspiracy. Hamilton Hall has a long history of student takeovers. John Yoon, _Hamilton Hall Has a Long History of Student Takeovers_, N.Y. Times, April 30, 2024, https://perma.cc/8TJ5-XUTJ.

**C.  The FAC should be dismissed with prejudice.**

A district court has discretion to dismiss a complaint with prejudice and without leave to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." _McCarthy v. Dun & Bradstreet Corp._, 482 F.3d 184, 200 (2d Cir. 2007) (citing _Foman v. Davis_, 371 U.S. 178, 182 (1962)). Here, futility and bad faith counsel in favor of dismissal with prejudice.

Plaintiffs have already amended their complaint without curing their defects because they are uncurable. Further amendment would be futile because Plaintiffs' claims are frivolous. The crux of the fifty-nine page FAC is set out in 225 paragraphs. The circumstances described in the FAC do not remotely meet the basic elements of the federal civil rights statutes invoked. Plaintiffs are shoehorning their allegations into a limited federal statutory provision that counsel

knows just does not fit. The defects are so fundamental as to be incurable. *See, e.g.*, *Clark v. Boughton*, No. 3:21-CV-1372 (SRU), 2022 WL 4778582, at \*14 (D. Conn. Oct. 3, 2022) (dismissing complaint with prejudice because "[w]ithout any evidence of invidiously discriminatory motivation, repleading would be futile and Clark cannot state a section 1985(3) claim"); *AR*, 2021 WL 5416235, at \*5 (dismissing Section 1985(3) claim with prejudice because "this claim fails due to a legal defect, rather than a pleading deficiency"); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (dismissing with prejudice where "[t]he problem with [Plaintiff's] causes of action is substantive; better pleading will not cure it").

Dismissal with prejudice is appropriate where an action is intended to harass. *Manhart v. WESPAC Found., Inc.*, No. 24-CV-08209, 2025 WL 2257408, at \*18 (N.D. Ill. Aug. 7, 2025) (dismissing with prejudice lawsuit targeting pro-Palestine activists based on a determination that it was brought for the improper purpose of harassment).

## VI. CONCLUSION

For the foregoing reasons, the Court should grant TPF's motion to dismiss with prejudice.

September 19, 2025                    Respectfully submitted,

/s/ *Carl Messineo*
Carl Messineo
cm@justiceonline.org

/s/ *Mara Verheyden-Hilliard*
Mara Verheyden-Hilliard
mvh@justiceonline.org

/s/ *Sarah Taitz*
Sarah Taitz
sarah.taitz@justiceonline.org

PARNERSHIP FOR CIVIL JUSTICE FUND
617 Florida Ave. NW
Washington, D.C. 20001
(ph): 202-232-1180
(Fax) 202-747-7747

*Counsel for Defendant The People's Forum*

25