UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARIANO TORRES and LESTER WILSON;

*Plaintiffs,*

v.

JAMES CARLSON, AIDAN PARISI, GRANT MINER, CATHERINE )CURRAN-GROOME, PEOPLE'S FORUM, INC., LISA FITHIAN, GABRIEL YANCY, ETHAN CHOI, and JOHN DOES 1–40,

*Defendants.*

Case No. 25-cv-3474 (CM)

**Oral Argument Requested**

---

**DEFENDANTS CARLSON, PARISI, FITHIAN, AND CHOI'S
REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS**

---

**COHEN&GREEN P.L.L.C.**
J. Remy Green
1639 Centre St., Suite 216
Ridgewood, New York 11385
t:  (929) 888-9480

December 12, 2025

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ......................................................................................................................ii

TABLE OF AUTHORITIES ..............................................................................................................iii

PRELIMINARY STATEMENT..........................................................................................................1

INCORPORATION BY REFERENCE...............................................................................................2

FACTUAL REPLY..............................................................................................................................2

ARGUMENT .......................................................................................................................................3

    I.    Plaintiffs Fail to Allege any Meeting of the Minds....................................................................3

        A.    Plaintiffs fail to allege a single fact suggesting Fithian joined a meeting of the minds specifically aimed at violating Plaintiffs' rights.................................................4

        B.    Plaintiffs fail to allege a plausible basis to conclude Parisi joined a meeting of the minds specifically aimed at violating Plaintiffs' rights..................................................4

        C.    For Carlson and Choi, Plaintiffs still fail to allege a meeting of the minds specifically aimed at violating Plaintiffs' rights because the meeting of the minds is to occupy Hamilton Hall. ...........................................................................................5

    II.    Plaintiffs' Motion to Strike Misses the Point, and the Identifications of Choi and Carslon are Not Plausible. ...................................................................................................................7

    III.    Plaintiffs' IIED Arguments Miss the Point..............................................................................8

    IV.    Plaintiffs Do Not Dispute the Elements Requiring Application of the Anti-SLAPP Law. 9

CONCLUSION..................................................................................................................................11

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Ashcroft v Iqbal*,
　556 US 662 (2009) ............................................................................................................. 3, 4, 5

*Beach v City of NY*,
　2023 US Dist LEXIS 151922 (SDNY Aug. 28, 2023) ............................................................ 7

*Biswas v City of NY*,
　973 F Supp 2d 504 (SDNY 2013) ....................................................................................... 6, 7

*Bray v Alexandria Women's Health Clinic*,
　506 US 263 (1993) ...................................................................................................... 1, 2, 4, 5

*Farbstein v Hicksville Pub. Lib.*,
　323 F Supp 2d 414 (EDNY 2004) ........................................................................................... 3

*Mitchell v City of NY*,
　841 F3d 72 (2d Cir 2016) ........................................................................................................ 6

*In re NY City Policing During Summer 2020 Demonstrations*,
　548 F Supp 3d 383 (SDNY 2021) ........................................................................................... 6

*Pangburn v Culbertson*,
　200 F3d 65 (2d Cir 1999) ........................................................................................................ 6

*Tasco v. Butler*,
　835 F.2d 1120 (5th Cir. 1988) ................................................................................................. 8

*Watts v. United States*,
　394 U.S. 705 (1969) .............................................................................................................. 10

*Zhang Jingrong v Chinese Anti-Cult World Alliance*,
　287 F Supp 3d 290 (EDNY 2018) ........................................................................................... 6

*Zielinski v Martuscello*,
　2025 US Dist LEXIS 75742 (SDNY Apr. 21, 2025) ........................................................... 3, 4

**PRELIMINARY STATEMENT**

The opposition to the Individual Defendants' motion to dismiss fails for more than a few reasons, but most fundamentally, it does not save the FAC's utter failure to allege that any of the Individual Defendants "act[ed] at least in part *for the very purpose of producing*" the deprivations of rights alleged. *Bray v Alexandria Women's Health Clinic*, 506 US 263, 275 (1993) (emphasis added).

Meanwhile, the motion to strike makes points on its own terms — that is, that the declaration itself cannot be a basis to grant the motion to dismiss — but fails to grapple with the fact that the four corners of the FAC make clear that Defendant Carlson is not the person who engaged the conduct alleged. The procedural mechanism to get there may be as simple as an in person or remote conference where, modesty aside, Carlson takes off his shirt. It is unfortunate that Plaintiffs want to force the Court into the middle of that process, but there is little question the Court can take judicial notice that Carlson is not the person Plaintiffs identify.

And last, Plaintiffs do not meaningfully reckon with the fact that *these* Defendants only engaged in speech (and for Defendants Parsi and Fithian, that is true even allowing for the misidentifications/implausible identifications), and accordingly, IIED is improper and the anti-SLAPP law has clear application. Plus, since Defendants seem to concede the basic points: That a pure-speech IIED claim cannot lie and that such a claim would trigger a mandatory fee award. So, regardless of everything else, at a minimum Plaintiffs concede Defendants Parsi and Fithian are entitled to dismissal of the IIED claims and related attorneys' fees.

Accordingly, for the reasons discussed here and in the moving papers, the Court should grant the motion and set a time for a fee application.
.

1

## INCORPORATION BY REFERENCE

As in the moving papers, in the interest of preserving space and time, Individual Defendants incorporate by reference TPF's reply memo motion by reference here, and only repeat as necessary for context,[1] and elaborate as necessary.

## FACTUAL REPLY

The Individual Defendants note specifically that Plaintiffs' fact section barely mentions anything Defendants Parisi and Fithian did. *See, e.g.,* PMOL at 7-12. And contrary to Plaintiffs' suggestion, each piece of what they allege about Parisi and Fithian is pure speech. *See, e.g.,* PMOL at 8 ("Parisi responded by posting a photo of the letter on social media…"); at 17 (Fithian was "coaching, training, and directing the Occupiers on how to storm and seize Hamilton Hall…").

Most critically, though, the opposition papers only confirm exactly what the moving papers (and FAC itself) said: What there was a meeting of the minds on was "coordinated a plan to seize Hamilton Hall." DMOL at 8. Nothing in what anyone agreed to was a violent assault on any person. Nor was there any agreement to trap anyone inside — as evidenced by Plaintiffs' own allegations that the Individual Defendants in Hamilton Hall ***specifically and repeatedly asked Plaintiffs to leave***. That some other non-party took other actions cannot be imputed under § 1985 without a meeting of the minds to "act at least in part for the very purpose of producing" the deprivations of rights alleged. *Bray v Alexandria Women's Health Clinic*, 506 US 263, 275 (1993).

Last, while Plaintiffs are certainly entitled to their views, they ask the Court to take a definitive

---

[1] *Accord* Individual Rules of the Hon. Colleen McMahon § V(D) ("You can also save pages by not telling the Court the obvious – there is no need to recite the standards for granting, e.g., a motion to dismiss, a motion for summary judgment, a motion for reconsideration…").

2

side in longstanding debates about language and prejudice — a role for which the Court is ill suited. For example, Plaintiffs — without citation — say that the word "Intifada" is necessarily a "repugnant, antisemitic smear." PMOL at 22. Without counsel taking a side in the debate, that is not a *fact*. Indeed, the Warsaw Ghetto uprising was described by the U.S. Holocaust museum (at least until 2024) as an "Intifada." And many (but certainly not all) of Plaintiffs' allegations paint with this problematically broad brush, in an area of significant public debate.

## ARGUMENT

**I.    Plaintiffs Fail to Allege any Meeting of the Minds.**

Even in reply, Plaintiffs offer no ***facts*** from which the Court can infer a conspiracy with the intended end of physical assault on Plaintiffs and locking them in a building. Begin with the standard: When a complaint includes allegations "that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v Iqbal*, 556 US 662, 678 (2009). And in the context of § 1985, the burden is higher: A plaintiff needs to allege substantial facts giving rise to an inference of a meeting of the minds of the alleged conspirators." *Farbstein v Hicksville Pub. Lib.*, 323 F Supp 2d 414, 418 (EDNY 2004).

More, where a plaintiff "engages in impermissible group pleading and lumps all the Defendants together in each claim and provides no factual basis to distinguish their conduct," the Court need only look at the allegations that allege specific conduct by specific actors. *Zielinski v Martuscello*, 2025 US Dist LEXIS 75742, at *8 (SDNY Apr. 21, 2025).

A look at those facts utterly fails to show any meeting of the minds as to the end of attacking Plaintiffs because of their association with Jewish people.[2]

---

[2] Indeed, as far as this goes, Plaintiffs seem to suggest they believe they have stated claims against every single person "who entered Hamilton Hall, including John Does." PMOL at 37. That Plaintiffs' claims are based expressly on a theory that

3

### A. Plaintiffs fail to allege a single fact suggesting Fithian joined a meeting of the minds specifically aimed at violating Plaintiffs' rights.

Plaintiffs' opposition includes Fithian's name only five times (even including the caption and definitions). The sole mention of her is that "Fithian was a commander, 'coaching, training, and directing the Occupiers on how to storm and seize Hamilton Hall and how to bar the doors so that no one could enter or leave, based on her years of experience agitating and protesting." PMOL at 17. Given the history of Hamilton Hall protests, at *best* that is an allegation "merely consistent with a defendant's liability." *Iqbal*, 556 US at 678. But even that is a stretch, because, per the FAC itself, such organizing was aimed at a specific goal: Getting "Columbia to, among other things, divest from companies that do business with Israel." PMOL at 5. Violence — at least as directed at *Plaintiffs* — is on its face inconsistent and counterproductive to the end that Plaintiffs allege Defendants combined to achieve.

Merely alleging Fithian provided training on how to engage in effective direct action is a far cry from alleging she entered a conspiracy to "act at least in part for the very purpose of producing" the deprivations of rights alleged. *Bray*, 506 US at 275. Plaintiffs do not seriously argue otherwise, and all but concede — with the single substantive mention of Fithian — that claims against her must be dismissed.

### B. Plaintiffs fail to allege a plausible basis to conclude Parisi joined a meeting of the minds specifically aimed at violating Plaintiffs' rights.

For Parisi, Plaintiffs allege a few groups of facts. First, that Parisi organized a "Resistance 101" event, but nothing in those facts suggests the event involved any agreement to engage in specific acts. PMOL at 6. Likewise, the FAC alleges that Parisi fought Columbia's eviction attempts (*id.* at 6-8), but

---

would allow claims against every single person in a massive protest should give the Court pause before accepting the theory that would allow such claims.

again, that has little to do with any conspiracy to "act at least in part for the very purpose of producing" the deprivations of rights alleged. *Bray*, 506 US at 275.

Slightly more on point, Plaintiffs say Parisi helped lead the protest at Hamilton Hall. PMOL at 17. And they are right, the protesters at Hamilton Hall "did not meet in the building by coincidence." *Id.* But that is not an agreement to "act at least in part for the very purpose of producing" the deprivations of rights alleged, and Plaintiffs do not (and cannot) explain how it is. *Bray*, 506 US at 275.

And that is the limit of the facts alleged about Parisi: Nothing in any fact suggests even ***knowledge*** something happened to Plaintiffs until this suit was filed; and certainly nothing suggests Parisi would have been anything other than upset it happened. Consider the facts of *Iqbal* itself: There too, there was no question the defendants had a plan to do ***something*** together. Looking at a suit alleging a government wide pattern of racially suspect policing — with the data to bear it out — the Supreme Court there accepted (arguendo) that the complaint might have had "well-pleaded facts [that] give rise to a plausible inference that respondent's arrest was the result of unconstitutional discrimination," but that did not ***necessarily*** mean every participant in those arrests joined a conspiracy. That is, because the "the complaint alleges discrete wrongs--for instance, beatings--by lower level Government actors" if the "complaint does not contain any factual allegation sufficient to plausibly suggest [the specific] petitioners' [relevant] state of mind." *Iqbal*, 556 U.S. at 683. The parallel between the attempt to impute a "beating[]" is even striking, as is the attempt to hold Parisi liable purportedly because of a supposedly-supervisory role. *Iqbal* directly bars Plaintiffs' theory.

### C. For Carlson and Choi, Plaintiffs still fail to allege a meeting of the minds specifically aimed at violating Plaintiffs' rights because the meeting of the minds is to occupy Hamilton Hall.

5

Putting to one side for now whether the FAC provides a plausible basis to attribute the conduct alleged to Carlson and Choi (addressed below), even on Plaintiffs' own terms there are no facts alleging a meeting of the minds.

Even Plaintiffs' own cases show why. Far from the single incident at issue here, *Zhang* covers "no fewer than twenty-five physical and/or verbal attacks on Falun Gong practitioners" across more than a decade, involving actions by specific defendants. *Zhang Jingrong v Chinese Anti-Cult World Alliance*, 287 F Supp 3d 290, 298 (EDNY 2018). Inferring a design to *keep doing the same thing* across 25 incidents is a far cry from inferring a design from something that happened once.[3]

By analogy, *Zhang* and Defendants' other cases look much like this Court's analysis of the history of police litigation in New York (*In re NY City Policing During Summer 2020 Demonstrations*, 548 F Supp 3d 383, 404 (SDNY 2021) (many past lawsuits, complaints, and settlements allow an inference of a policy) compared to the basic rule that "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*." *Mitchell v City of NY*, 841 F3d 72, 80 (2d Cir 2016). That is, inferring the object of a meeting of the minds from its results — when Plaintiffs affirmatively allege that the meeting of the minds was (at least, explicitly) aimed at another purpose — cannot be supported by a single incident.

In *Biswas v City of NY*, 973 F Supp 2d 504, 534 (SDNY 2013), the plaintiff alleged that one defendant "agreed with the Eutsey, Kwait, and Kim-Ross about the plan of action" with specificity. That is, he alleged they "communicated with each other and 'devised a plan ***to arrest, detain, restrain, prosecute and suspend the plaintiff***, all knowing that there was no evidence linking the plaintiff to

---

[3] Meanwhile, the 1999 decision in *Pangburn* was decided pre-*Iqbal* — and pre-*Tangretti*, for that matter — and the portion Defendants cite likely does not survive those sea changes in law, at least as far as its use of a "beyond doubt" pleading standard. *Pangburn v Culbertson*, 200 F3d 65, 72 (2d Cir 1999).

6

any criminal conduct." *Id.* (alterations accepted; emphasis added).  That is, the plan alleged was specifically aimed at the plaintiff — it was not alleged purely (as Plaintiffs suggest) by inference.

Put simply, Plaintiffs take an unexplained leap — and supporting the leap with *facts* is what the standard demands:  They say "it may be plausibly inferred that Defendants reached an agreement to take over Hamilton Hall for the purpose of depriving Jews and their supporters of the equal protection of the laws."  PMOL at 13.  For the first clause, perhaps:  There may be enough in the FAC to show an agreement "to take over Hamilton Hall."  But for the second, Plaintiffs offer nothing, even now:  There are no facts suggesting any Defendant had *the aim* of "depriving Jews and their supporters of the equal protection of the laws."

## II. **Plaintiffs' Motion to Strike Misses the Point, and the Identifications of Choi and Carslon are Not Plausible.**

When a party incorporates video in their complaint — as Plaintiffs do here — a defendant is not required to accept facts contradicted by that video.  *See, e.g., Beach v City of NY*, 2023 US Dist LEXIS 151922, at *10 (SDNY Aug. 28, 2023) (dismissing claims where video showed "no evidence that Defendants hit or kicked her as alleged, or that Plaintiff warned the officers at that time that she suffered from epilepsy").  As set out in Individual Defendants' motion to dismiss, Plaintiffs allege a *specific person* attacked them and that the person was Carlson.[4]

But the person's shirt comes off in the video, and shows tattoos that do not match Carlson's.  Plaintiffs have no response to this fact, other than complaining that it comes too early.  But *Plaintiffs* put the video in the record.  And the Court can judicially notice facts that are obvious and beyond dispute.  Perhaps a declaration is the wrong mechanism (but Defendants did not suggest it was the

---

[4] For this reason, Plaintiffs' complaints that Carlson's declaration does "not deny[] that he did in fact attack Mr. Torres" (PMOL at 35) misses the point entirely:  Carlson's declaration is not meant to challenge the well-pled allegations (inclusive of the video), just establish that there are judicially noticeable facts that mean the person the allegations *are* about isn't him.

7

only one), but an in person or remote conference could allow judicial notice after Mr. Carlson shows his identification.  Or a brief deposition might provide Plaintiffs' counsel with what they need to understand there is no Rule 11 basis to allege Carlson is the person in the video.

While the declaration itself is — as Plaintiffs' correctly identify — not a basis to resolve this issue on its own, judicial notice of tattoos for identification purposes is not uncommon and does not pose a Fifth Amendment issue, suggesting it does not even have a testimonial component.  *See, for example, Tasco v. Butler*, 835 F.2d 1120, 1124 (5th Cir. 1988) ("The court's judicial notice of [the defendant's] identifying tattoos and scar did not impinge on his Fifth Amendment privilege.").  Since such notice does not have a testimonial component, it does not pose the same problems as allowing a declaration on a motion to dismiss.

Plaintiffs *do* seem to concede by silence that if their methods for identifying Carlson are suspect, so too are their methods for identifying Choi.

Last, Plaintiffs' resistance to identifying the *correct* Defendant(s) raises at least *some* questions about whether the intention here is really to seek relief (as opposed to forcing litigation) — since, of course, even if Plaintiffs make it past the motion to dismiss, a prompt summary judgment motion will resolve this issue.  Plaintiffs' resistance to any mechanism of clearing things up is telling.

### III. **Plaintiffs' IIED Arguments Miss the Point.**

Plaintiffs' IIED arguments — that there was more than speech involved — simply do not apply to Fithian and Parisi.  Plaintiffs ***only allege speech*** by Fithian and Parisi, and do not seriously argue otherwise.[5]  Given that Plaintiffs (rightly) seem to concede speech-only IIED claims do not work, that is sufficient for dismissal of those claims.

---

[5] Plaintiffs do not suggest the speech they allege Fithian and Parisi engaged in involved fighting words, true threats (since they were not directed at Plaintiffs), or imminent incitement.

Additionally, Plaintiffs do not discuss context. To be sure, the Restatement says that IIED may lie for a home invasion. But IIED relies on community standards for outrage. And at Columbia, as Plaintiffs do not appear to dispute, take overs of Hamilton Hall are a proud tradition: They are not outrageous inherently.

Plaintiffs may be right that if the Court accepts the (mis-)identifications of Choi and Carlson are plausible, IIED might properly proceed against them (in state court). But Plaintiffs do nothing to resuscitate their claims against Parisi and Fithian, who engaged in pure speech.

### IV. **Plaintiffs Do Not Dispute the Elements Requiring Application of the Anti-SLAPP Law.**

While Plaintiffs vigorously dispute the application of the anti-SLAPP law, they quietly concede all they need to for the Court to award fees.

First, Plaintiffs do not appear to dispute that the Anti-SLAPP law's substantive fee entitlement (but not its heightened procedural standard) applies in federal court. PMOL at 36-37.

Second, Plaintiffs seem to concede, by silence, that the protest at Hamilton Hall (and planning it) had a connection to an issue of public concern. And Plaintiffs also seem to concede a determination that a cause of action should be dismissed triggers mandatory fees.

Accordingly, the only thing remaining is whether the IIED claim is "based upon" either "communications" in public forums or "other lawful conduct" that is constitutionally protected. PMOL at 37-38. Here, Plaintiffs' failure to engage in anything other than group pleading dooms them: Plaintiffs' theories of liability for Parisi and Fithian are *purely* based upon communications in public forums.

For Fithian, as noted above, Plaintiffs allege pure speech: "coaching, training, and directing" protesters, literally noting that Fithian's speech was "based on her years of experience agitating and

9

protesting." PMOL at 17. Protesting and agitating are core speech.[6] Accordingly, fees are mandatory, since there can be no IIED liability for "coaching, training, and directing" protesters to do what multiple generations of Columbia students have done and been lionized for.

Likewise, for Parisi, Plaintiffs' theory of liability is expressly "based upon" Parisi's public speech: calling out the Columbia administration in strong terms, organizing a "Resistance 101" training, and the like.[7] And again, as noted above, given the context, there is simply no plausible suggestion that merely participating in an occupation of Hamilton Hall reaches any community standard for outrageousness, given Columbia's history. Accordingly, the claim fails, and because Plaintiffs' theory is "based upon" Parisi's speech, fees are mandatory.

---

[6] There is no claim Fithian's speech, at least *as* speech, was unlawful — only that the speech shows she joined a conspiracy.

[7] Plaintiffs' suggestion that saying Columbia should burn, as a turn of rhetoric, is unlawful has no place in the First Amendment canon. *Cf., e.g., Watts v. United States*, 394 U.S. 705 (1969).

## **CONCLUSION**

The Court should dismiss the Section 1985, Section 1986 claims, and IIED claims, and decline jurisdiction over the remaining claims. In light of the dismissal, the Court should award mandatory anti-SLAPP fees, to be negotiated among counsel, or subject to a separate application should the parties be unable to agree.

Dated:   December 12, 2025
         Queens, New York

                                        Respectfully submitted,

                                        **COHEN&GREEN P.L.L.C.**


                                        By:   _____/s/_____
                                        J. Remy Green

                                        1639 Centre Street, Suite 216
                                        Ridgewood (Queens), NY 11385
                                            t: (929) 888-9480
                                            f: (929) 888-9457
                                            e: remy@femmelaw.com