**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| MARIANO TORRES and LESTER WILSON, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No.:  25-CV-03474 |
| JAMES CARLSON, AIDAN PARISI GRANT MINER, CATHERINE CURRAN-GROOME, PEOPLE'S FORUM, INC., LISA FITHIAN, GABRIEL YANCY, ETHAN CHOI, and JOHN DOES 1–40, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

<u>**DEFENDANT THE PEOPLE'S FORUM'S REPLY BRIEF IN SUPPORT OF ITS**</u>
<u>**MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**</u>

The People's Forum (TPF) submits this reply in support of its motion to dismiss. To the extent that any argument on opposition is not expressly referenced in this limited scope filing, TPF rests on the thorough presentation made in its opening motion.

**I.     Plaintiffs concede that TPF did not participate in an alleged April 29, 2024, conspiratorial agreement to take over Hamilton Hall.**

The conspiratorial agreement at the heart of Plaintiffs' claims is an alleged April 29, 2024, agreement by identified parties *excluding The People's Forum*, to "seize and hold Hamilton Hall until such time as Columbia acquiesced to CUAD's anti-Zionist, anti-Israeli and anti-Semitic [sic] demands," FAC ¶ 154, specifically "divestment, financial transparency, and amnesty," *id*. ¶ 135. That agreement (to which TPF was not a party) did <u>not</u> target Jews for violence, did not involve alleged class-based violence, but allegedly contemplated violence against *any person* who might incidentally obstruct said seizure. FAC ¶¶ 150, 102.

On opening motion, TPF identified that the alleged "group of co-conspirators," FAC ¶ 101, all named defendants, expressly excluded TPF. Mem. of L. in Supp. of Def. TPF's Mot. to Dismiss 3, ECF No. 36-1 (Sept. 19, 2025) ("TPF's Mot.") (citing FAC ¶ 101). In their opposition filing, Plaintiffs admit and reiterate that the alleged participants to this agreement excludes TPF. Pls.' Jt. Opp. to Mots. to Dismiss 19, ECF No. 52 ("Pls.' Opp.") ("At this meeting, certain of the Individual Defendants along with other representatives from CUAD, NSJP, SJP, JVP, and WOL, coordinated a plan to seize Hamilton Hall.") (notably excluding The People's Forum and equally notably including Jewish Voice for Peace as being an alleged anti-Semitic co-conspirator).

Plaintiffs concede that TPF is also excluded from those alleged to have "directly and intentionally participated in the takeover and Occupation of Hamilton Hall." Pls.' Opp. 1 (arguing the co-called "Occupiers" were comprised of "Individual Defendants and Defendant John Does 1-40," to the exclusion of TPF); TPF's Mot. 5; FAC ¶ 151, 157 (expressly alleging

identities of those who went upon the premises, excluding TPF).

Nor do Plaintiffs allege that TPF was present on Columbia's *closed* campus during the seizure. Pls.' Opp. 7–11; FAC ¶ 109–41; TPF's Mot. 5.

Plaintiffs, in section 1 of their "statement of facts," allege that events on October 7, 2023, gave rise to "anti-Semitic" activity on Columbia's campus, identifying a "web of individuals and non-defendant organizations" including Jewish Voice for Peace, which "planned, supported, and agreed to organize actions on Columbia's campus to express anti-Semitic hatred." Pls.' Opp. 5, yet again to the exclusion of The People's Forum. TPF's Mot. 6 (observing no allegation TPF was present at or organizer of campus encampment, no allegation of any anti-Jewish expression or activity by TPF on campus).

Plaintiffs, in section 2 of their "statement of facts," allege one organization (not TPF) and two individuals organized a "Resistance 101" event. Pls.' Opp. 6. There is no particularized allegation of TPF involvement with this event. The entire event on YouTube is incorporated by reference, FAC ¶ 58 n.21, and there is not a scintilla of indication of TPF's association with it.

Plaintiffs, in section 3, concede the "Gaza Solidarity Encampment" was not organized nor planned by TPF. Pls.' Opp 6–7 (arguing Jewish Voice for Peace and others but not TPF organized encampment); TPF Mot. 6 (observing FAC does not allege TPF to have organized or planned the encampment); FAC ¶ 67 (averring identity of organizers, excluding TPF); *see also* FAC ¶ 71 (on first day of encampment, when campus was open, TPF encouraged people drop off food, make art, make signs, or donate to the Barnard-Columbia Student Abolition Collective).

Plaintiffs persist in misleadingly truncating TPF's politically supportive calls which, time and again, expressly call for rallies *outside* Columbia's campus. Pls.' Opp. 8 (citing FAC ¶¶ 93-94, intentionally omitting that the call was for rallies at "115 & Broadway" and outside campus);

Pls.' Opp. 9 (citing FAC ¶ 106, again omitting that call was to rally at "116th & Broadway"); Pls.

Opp. 9 (citing FAC ¶ 107, again omitting call was to join ongoing rally at "116th & Broadway").

Plaintiffs allege an inference can be drawn that TPF "was in direct communication with

co-conspirators in the building" because TPF posted at 12:40 a.m. on April 30, 2024, about the

seizure. The post, however, is a call that reports a seizure had occurred and called "for people to

join the *ongoing rally* outside of Columbia" at "116th & Broadway." FAC ¶ 107 (italics added).

This doesn't suggest "direct communication." The Court need not accept Plaintiffs' fantastic

conspiracy theory where there is an "obvious alternative explanation," *see Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 567 (2007), which is that some people were literally outside the gates of

Columbia when the seizure occurred. Word traveled fast from within the gates to outside.

Plaintiffs conclusorily argue that TPF "played an active role in planning and executing

the conspiracy," and "directed" the seizure, Pls.' Opp. 14, 16, citing FAC ¶¶ 97 and 103, neither

of which supports such claim, the latter of which doesn't even reference TPF.

Plaintiffs vaguely allege that "TPF's social media posts and statements show a degree of

coordination between TPF and the Occupiers sufficient to allege a meeting of the mind." Pls.'

Opp. 15. Nothing referenced shows either advance knowledge of or agreement to seize Hamilton

Hall, and that includes De Los Santos' speech that "when the call goes out, we have to go back

out" to the points of rally outside of Columbia's campus. Plaintiffs emphasize De Los Santos'

firebrand political rhetoric, "We have to be the bodies willing to stand between the police and our

students." That is free speech and impassioned oratory to support a political cause at the center of

the world's attention with no reference to Hamilton Hall whatsoever.[1] "[S]pontaneous and

---

[1] Plaintiffs introduce a new factual allegation that "groups of individuals formed multiple layers of human cordons around Hamilton Hall." Pls.' Opp. 15. This allegation should be discarded because Plaintiffs can only argue facts within the four corners of the FAC. *See Levin v.*

emotional appeals for unity and action in a common cause" are not actionable. *See NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 928 (1982). If the "cost" of impassioned or fiery political rhetoric on such important issues is to be haled into federal court in expensive and extensive proceedings with no allegation of participation in some referenced alleged conspiratorial agreement, the price will be paid by all in terms of suppression of the free speech that is the lifeblood of democracy.

In evaluating motions to dismiss, courts draw reasonable inferences in the Plaintiffs' favor, not any and all imaginations that align with the plaintiffs' fanciful conspiracy theories.[2] *Upper Hudson Planned Parenthood, Inc. v. Doe*, No. 90-CV-1084, 1991 U.S. Dist. LEXIS 13063, at *35 (N.D.N.Y. Sep. 12, 1991) does not support Plaintiffs' claim. That court held that Plaintiffs stated a § 1985(3) claim against two organizations and failed to state a claim against a third organization who allegedly "advocate[d] and encourage[d]" a list of illegal activities, including trespass and assault. *Id.* at *40. The court held that plausible claims were stated against two of the organizations because "certain of the individual defendants are associated with" those

---

*Sarah Lawrence Coll.*, 747 F. Supp. 3d 645, 657 (S.D.N.Y. 2024). The allegation is also irrelevant because it does not involve TPF. Indeed, the article Plaintiffs cite does reference TPF—not as participants in "human cordons" but as hosts of a rally *outside the gates* of Columbia at 116th Street and Amsterdam Avenue. *See* Gabriella Gregor Splaver, et al., *In Focus: When Hamilton Hall Became 'Hind's Hall'*, Colum. Spectator (May 12, 2024), tinyurl.com/Hamilton-HindsHall. Rather than evincing participation in a conspiracy to seize Hamilton Hall, the article demonstrates that TPF hosted *lawful rallies outside campus.*

[2] Plaintiffs claim that TPF "decid[ed] to delay the start time of the meeting to allow individuals traveling from Columbia University's Upper West Side campus to TPF's midtown offices." Pls.' Opp. 18. This allegation should be discarded because it is not in the FAC. *See Levin*, 747 F. Supp. 3d at 657. Even if the Court were to consider this allegation, TPF's alleged adjustment of the meeting time to allow student activists to attend does not give rise to a plausible inference that TPF conspired to occupy Hamilton Hall, in particular where the meeting was open to the public, attended by reporters, and not even a reference to the Hall was made.

organizations, and "those individuals allegedly engaged in illegal overt acts, purportedly at the behest of [the two defendant organizations.]" *Id.* at *41–42. The court dismissed the case against the third organization that was not associated with an individual defendant alleged to have engaged in the underlying trespass and assault. *Id.* at *44. TPF is situated similarly to the third organization. Furthermore, the FAC does not allege that TPF ever encouraged anybody to engage in illegal activity such as trespass and assault.

*Sines v. Kessler*, 558 F. Supp. 3d 250 (W.D. Va. 2021) held that a § 1985(3) conspiracy claim against a white supremacist organization and its top leadership could proceed where there was "substantial evidence" that League of the South defendants were "heavily involved" with event planning, motivated members to attend to protect against perceived Black and Jewish "enemies" of the white race, were sought out for "a key role in Unite the Right precisely because of their physicality and training to fight, which they deployed at Unite the Right – as exhibited in numerous videos," among other evidence. *Sines*, 558 F. Supp. 3d at 254 – 255. Among such evidence was the League of the South's social media posts that specifically promoted and facilitated logistics at the Unite the Right "torch march" where violence occurred, which was considered *in combination with members' presence at the event central to violent injury*. *Id.* at 283.  Here, Plaintiffs do not allege that any agent or employee of TPF was present at the seizure of Hamilton Hall or was party to the alleged conspiratorial agreement. Not one social media post nor communication calls for participation at the Hamilton Hall seizure. *Every* call for rallying is outside of and off campus. Notably, the *Sines* court dismissed a defendant at the motion to dismiss phase where allegations that this defendant joined into a conspiracy were conclusory and without supporting particularity, "there [were] no allegations that he participated in any violent acts." *See Sines v. Kessler*, 324 F. Supp. 3d 765, 794 (W.D. Va. 2018). The defendant even

promoted the specific rally where violence occurred (notably TPF never promoted the seizure of

Hamilton Hall, presence at Hamilton Hall, nor any violence), which "at most demonstrate[d] an

agreement to promote the rally, which many people attended for divergent reasons." *Id.* "His

promotion of the event is insufficient to plausibly allege an agreement to commit violence." *Id.*

Although the defendant was alleged to have engaged in viciously racist speech (an allegation not

plausibly alleged against TPF), such speech was "far short of plausibly pleading an agreement to

commit racial violence and, even within this context, is protected speech." *Id.*

## II.    The alleged conspiracy to occupy Hamilton Hall is not actionable under § 1985(3).

### A.    Plaintiffs are not members of the protected class.

Section 1985(3) plaintiffs must be members of the protected class against which class-

based animus and violence is targeted. *See* TPF's Mot. 13–16. Plaintiffs are not.

Plaintiffs invoke a single out-of-circuit district court opinion that holds that § 1985(3)

claims may be advanced by activist white supporters of Blacks and their civil rights who were

targeted by violence for engaging in that active support. Pls. Opp. 30 (citing *Sines*, 324 F. Supp.

3d at 780). Plaintiffs do not assert themselves to be supporters of Jewish persons or of Zionism.

Even were one to extend *Sines* to the context of anti-Jewish animus notwithstanding its sourcing

in the Thirteenth Amendment, Plaintiffs remain outside of such extended scope. Plaintiffs argue

that *Sines* must be even further extended, to encompass "*perceived* support" of Jewish persons or

Zionism, Pls.' Opp. 30 (italics added), even where there is no such actual or overtly identifiable

support. There is no case standing for this proposition in any context.

Plaintiffs do not oppose TPF's argument that defining a class to include all "perceived

supporters" is not viable because that definition is wholly indeterminate. *See* TPF.'s Mot. 14. Nor

do Plaintiffs respond to TPF's discussion of *Puglisi v. Underhill Park Taxpayer Ass'n*, 947 F.

Supp. 673, 692 (S.D.N.Y. 1996), *aff'd* 125 F.3d 844 (2d Cir. 1997), which rejected the expansion

of § 1985(3) protected class to encompass non-member supporters. *See* TPF's Mot. 15.

### B. Plaintiffs have not plausibly alleged that TPF acted with anti-Jewish animus.

Plaintiffs claim that the "FAC alleges, in scrupulous detail, expressive activity by Defendants as evidence of Defendants' own anti-Semitic animus," but their brief cites only two instances of purported anti-Semitic speech by TPF Director De Los Santos, and neither allows for a reasonable inference that TPF harbors anti-Jewish animus. *See* Pls.' Opp. 21 (citing FAC ¶¶ 38–39, 86, 66). De Los Santos, in an event that predated the Columbia encampment by more than half a year, made a political statement in which he expressed support for resistance against Israel's brutal occupation of Palestinian lands and people. His statements do not reference Jews or reflect anti-Jewish animus. He posted an image of bulldozers tearing down the barbed wire fencing that entraps innocent Gazans, families, day in and day out, as if they were animals. He called this action "heroic resistance." He wrote "2 million Palestinians have been held prisoners by the Zionists in the open air prison that is occupied Gaza." FAC ¶ 38 n. 13. He also posted a message that contained a video, which did not depict any violence against any human, and observed that current events reflected a "new phase against the genocidal occupation of [Palestinian] lands & people." FAC ¶ 38 n. 14.

De Los Santos, a life-long opponent of racism and antisemitism, has hearkened to the movement to eradicate the national structure of apartheid South Africa. He calls for democratic co-existence. "Muslims, Christians, and Jews lived together in peace before the colonial project of Zionism was imposed on them. We want to replace colonialism and ethnic supremacy with democracy - - that is no incitement to genocide! Historic Palestine shows the possibility for co-existence among people of all faith traditions." Manolo De Los Santos, *We Will Not Apologize: Zionism Is Racism!*, The People's Forum Blog (Jan. 18, 2024)

https://peoplesforum.org/blog_post/we-will-not-apologize-zionism-is-racism/

[https://perma.cc/3K6B-HN6H]. He is an anti-Zionist, which cannot be equated with anti-Jewish animus. *See* StandWithUs Ctr. for Legal Just. v. Mass. Inst. of Tech., 158 F.4th 1 (1st Cir. 2025).

Jews (and non-Jews) are on all sides of the issue of Zionism, as evidenced by yet four more references to Jewish Voice for Peace as anti-Semitic on opposition filing. Plaintiffs ask this Court to expand the definition of anti-Jewish animus to reach anti-Zionist expression, even where the speaker is Jewish.   This reasoning, that "some" anti-Zionist speech masks or harbors anti-Jewish animus, therefore all anti-Zionist speech "plausibly" manifests anti-Jewish animus is fallacious. It generalizes from a subset to the whole and, if allowed, would permit allegation of motive solely by association or purely protected political speech.

In support of its argument that it has sufficiently identified anti-Jewish animus, Plaintiffs analogize to the Title VI case *Gartenberg v. Cooper Union for the Advancement of Sci. & Art*, 765 F. Supp. 3d 245, 267 (S.D.N.Y. 2025). Pls.' Opp. 22–24. *Gartenberg* is inapposite.

Title VI liability can be based on a school's "deliberate indifference" to pervasive discriminatory harassment. *Gartenberg*, 765 F. Supp. 3d at 259. This mode of analysis, which permits the court to consider an array of alleged incidents of anti-Semitic conduct by individuals who are not parties to the lawsuit, is a poor guide for a § 1985(3) claim, which requires plaintiffs allege specific facts that each defendant possessed discriminatory animus. *Id.* at 272-74.[3]

Furthermore, the conclusion that the *Gartenberg* Plaintiffs plausibly alleged anti-Jewish

---

[3] Plaintiffs misrepresent *Tchatat*, claiming that it holds that a plaintiff can state a civil rights conspiracy where "*some* of the[] defendants were motivated *at least in part* by racial animus." Pls.' Opp. 22 (quoting *Tchatat*, 2015 U.S. Dist. LEXIS 115093, at *13). In fact, that quotation is describing a §1983 claim and the same reasoning is not applied to the court's analysis of the §1985(3) claim. *Tchatat* dismissed §1985(3) claims against certain defendants for failure to allege "any specific facts from which to infer" that those particular defendants "acted with race based animus." *Id.* at *32 (citing *Biswas v. Kwait*, 576 F. App'x 58 (2d Cir.2014)).

animus turned on allegations of speech and conduct bearing specific hallmarks of anti-Jewish bias. Students displayed signs that "specifically referred to 'Jews,'" wrote graffiti "in lettering made to resemble the stylized font commonly associated with Hitler's Mein Kampf," and chanted pro-Palestine slogans "at Jewish students … who were wearing visibly Jewish attire and were immediately visible to the demonstrators." *Id.* at 268–69. The FAC does not contain allegations that TPF engaged in any similar anti-Jewish speech or conduct.

### C. The alleged conspiracy was not aimed at violating a protected right.

First, Plaintiffs argue that this Court should reject the well-reasoned, longstanding case law in this circuit that a generalized right to be free from racial violence is not cognizable under that § 1985(3). *See Emanuel v. Barry*, 724 F. Supp. 1096, 1103 (E.D.N.Y. 1989); *Hogan v. Cnty. of Lewis*, Y., No. 7:11-CV-0754, 2015 WL 1400496, at *12 (N.D.N.Y. Mar. 26, 2015), *aff'd sub nom. Okudinani v. Rose*, 779 F. App'x 768 (2d Cir. 2019); *see also Doe v. AR*, No. 21-CV-06353, 2021 U.S. Dist. LEXIS 224117 (W.D.N.Y. Nov. 19, 2021). Plaintiffs assert that this Court should instead follow the expansive approach adopted by *Sines* and *Buck v. Goyim Defense League*, No. 3:25-cv-00677, 2025 WL 3281595 (M.D. Tenn. Nov. 25, 2025), which do recognize such a right. *See* Pls.' Opp. 28; Pls.' Notice of Supp. Auth., ECF No. 55. *Sines* and *Buck* are unpersuasive because they treat § 1985(3) as a "general federal tort law"—something the Supreme Court has specifically admonished courts not to do. *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). Section 1985(3) is purposefully cabined to two rights—the right to be free from involuntary servitude and the right to travel. *See Hogan*, 2015 U.S. Dist. LEXIS 38103, at *32 (citing *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 278 (1993)).[4]

---

[4] Plaintiffs argue that *Tchatat v. City of N.Y.*, 2015 U.S. Dist. LEXIS 115093 (S.D.N.Y. Aug. 28, 2015) and *Sines v. Yiannopoulos*, No. 20 Misc. 241, 2020 WL 6058279 (S.D.N.Y. 2020) support the contention that there is a constitutional right to be free from racial violence, Pls.' Opp. 26–28, but neither opinion addresses this issue in any way.

Second, this case does not implicate the right to travel. Plaintiffs' argument to the contrary is based primarily on an expansive reading of dicta from a decades-old unpublished opinion, which stated, "[i]t is possible that the right to travel could protect plaintiff's right to travel to the hospital, and that denial of entrance to the hospital would impinge upon that right." *See* Pl. Br. 28–29 (quoting *Campbell v. Westchester Cty.*, 96-cv-0467, 1997 U.S. Dist. LEXIS 19750, at *4 (S.D.N.Y. Dec. 11, 1997)).[5] *Campbell*'s interpretation of the right to travel has been contradicted by the U.S. Court of Appeals, which stated that "it would distort the right to free travel beyond recognition to construe it as providing a substantive right to cross a *particular* parcel of land, enter a *chosen* dwelling, or gain admittance to a *specific* government building." *Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008). No allegations in the FAC relate to the constitutionally protected "right to travel locally through public spaces and roadways." *Id.* at 75 (quoting *Johnson v. City of Cincinnati*, 310 F.3d 484, 498 (6th Cir. 2002)).

Finally, it is implausible that the "conscious objective" of the conspiracy to occupy Hamilton Hall was either to inflict racial violence or to interfere with anybody's right to travel. *See Bray*, 506 U.S. at 275-76. The conscious objective of the occupation was to pressure the university to acquiesce to policy demands. *Compare* FAC ¶ 154 *with StandWithUs Ctr. for Legal Just.*, 158 F.4th 1 ("[P]laintiffs' allegations offer no facts to plausibly suggest that the protestors agreed to target Jewish students, as opposed to agreeing to demand that the university adopt the activists' position regarding the conflict between Israelis and Palestinians.").

## III.    CONCLUSION

For the foregoing reasons, the Court should grant TPF's motion to dismiss with prejudice.

---

[5] *Tchatat*, again cited by Plaintiffs, does not address the issue of whether the plaintiff had stated a violation of the constitutional right to travel.

December 12, 2025                    Respectfully submitted,


                                    /s/ *Mara Verheyden-Hilliard*
                                    Mara Verheyden-Hilliard
                                    mvh@justiceonline.org

                                    /s/ *Carl Messineo*
                                    Carl Messineo
                                    cm@justiceonline.org

                                    /s/ *Sarah Taitz*
                                    Sarah Taitz
                                    sarah.taitz@justiceonline.org

                                    PARNERSHIP FOR CIVIL JUSTICE FUND
                                    617 Florida Ave. NW
                                    Washington, D.C. 20001
                                    (ph): 202-232-1180
                                    (Fax) 202-747-7747

                                    *Counsel for Defendant The People's Forum*